[No. D051505. Fourth Dist., Div. One. Oct. 24, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
TODD RANDALL STIER, Defendant and Appellant.

## COUNSEL

Lizabeth Weis, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, James D. Dutton and Alana Cohen Butler, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**McCONNELL, P. J.**—Two police officers stopped a truck for violating the Vehicle Code requirements for mud flaps and to investigate whether the backseat passenger was wearing a seatbelt. Before the stop, the officers had been informed by Drug Enforcement Administration (DEA) agents the vehicle had been involved in a narcotics transaction. After one of the officers found narcotics during a consensual search of the front seat passenger, the other officer ordered the driver to get out of the truck. Because of the driver's height, the officer handcuffed the driver and then obtained the driver's consent to be searched. The officer discovered a large amount of methamphetamine in the right front pocket of the driver's jeans. The primary question presented in this appeal is whether the methamphetamine evidence should have been suppressed. We conclude that the evidence should have been suppressed because the prosecution did not establish the handcuffing of the driver was reasonably necessary to the detention and, consequently, did

not establish the driver's subsequent consent to be searched was voluntary. We, therefore, reverse the trial court's judgment.

## PROCEDURAL BACKGROUND

The prosecution charged Todd Randall Stier with transportation of methamphetamine (Health & Saf. Code, § 11379, subd. (a))[1] and possession of methamphetamine for sale (§ 11378).[2] Stier moved to suppress the methamphetamine evidence under Penal Code section 1538.5, arguing his handcuffing constituted an illegal arrest making his subsequent consent to be searched involuntary. The trial court denied the motion, finding the police reasonably detained Stier in handcuffs because of Stier's size and did not coerce Stier's consent.

A jury subsequently convicted Stier of transportation of methamphetamine (§ 11379, subd. (a)). The jury acquitted Stier of possession of methamphetamine for sale (§ 11378), but convicted him of the lesser included offense of possession of methamphetamine (§ 11377, subd. (a)). At the sentencing hearing, the trial court denied Stier's request for a finding that his transportation of methamphetamine was for personal use, which would have made Stier eligible for drug treatment probation under Proposition 36. (Pen. Code, §§ 1210, 1210.1.) The trial court then suspended imposition of sentence and granted Stier formal probation for three years, conditioned in part upon Stier serving 120 days of local custody under an electronic surveillance program.

Stier appeals, arguing the trial court erred by denying his motion to suppress and by denying his request for a personal use finding. Because we conclude the trial court erred in the first respect, we do not address whether the trial court also erred in the second respect.

## FACTUAL BACKGROUND

*Prosecution Evidence*

At the hearing on the motion to suppress, San Diego Police Officer Christopher Leahy testified DEA agents told him and his partner, Officer Luke Johnson, they had witnessed a narcotics transaction involving the occupants of a GMC pickup truck. The agents gave Leahy and Johnson the driver's description, the vehicle's description, the vehicle's license number,

---

[1] Further undesignated statutory references are to the Health and Safety Code.

[2] The district attorney also charged Stier with possession of cocaine (§ 11350, subd. (a)). In unreported proceedings, the trial court dismissed this charge during the trial.

and the vehicle's location. They asked Leahy and Johnson to follow the truck in hopes of developing probable cause to stop it.

While following the truck, Leahy noticed the truck's mud flaps were four inches too small in violation of the Vehicle Code. He also saw a passenger in the backseat moving in a manner suggesting she was not wearing a seatbelt. Leahy and Johnson stopped the truck for the mud flap violation and to investigate the possible seatbelt violation.

As the truck was being stopped, the front seat passenger, Renya Renteria, got out of the vehicle and started walking away. Johnson contacted and detained Renteria because his standard practice, for officer safety reasons, is to detain all occupants of a vehicle during a traffic stop, particularly when the stop occurs in a high gang, high narcotics area as it did here. After Johnson detained Renteria, he asked her for consent to search her person. He also asked her whether she had anything illegal on her. She told him she had narcotics in her pocket. Johnson found the narcotics when he searched her and relayed this information to Leahy. Johnson had no information Renteria possessed a weapon.

Meanwhile, Leahy approached the truck and contacted the driver, Stier. Leahy noticed a minor sitting in the backseat. As Leahy finished explaining to Stier the reasons for the traffic stop, Johnson told Leahy about the narcotics he found on Renteria. Concerned both about the narcotics find and the welfare of the minor, Leahy asked Stier to get out of the truck so he could investigate further.

Leahy found Stier to be "very cooperative," "very easygoing," "very docile," "very polite," and "very mellow." In addition, Stier "did not appear to be nervous at all." However, when Stier got out of the truck, Leahy, who is six feet one inch or six feet two inches tall, was "taken aback" by Stier's height of six feet six inches.[3] Because Leahy felt "uncomfortable" with Stier's height and because Leahy knew narcotics users and dealers sometimes carry weapons, Leahy decided to handcuff Stier. Nonetheless, at the time Leahy handcuffed Stier, Leahy had no specific, articulable facts suggesting Stier was armed. Leahy also did not believe Stier actually possessed any narcotics.

After Leahy handcuffed Stier, Stier denied having any narcotics, weapons, or contraband on his person and told Leahy to go ahead and check. Leahy searched Stier and found a clear plastic wrapper containing a large amount of an off-white crystallized substance in the right front pocket of Stier's jeans.

---

[3] Both Leahy and Stier are thin. Nothing in the record indicates Leahy was concerned about Stier's weight or bulk.

*Defense Evidence*

Stier testified he had just stopped to drop Renteria off at her residence when he heard the siren and saw the overhead lights on Leahy's patrol car. As soon as Renteria got out of the truck, Johnson immediately contacted her. Leahy went to the driver's window and contacted Stier. Within 30 seconds, Leahy asked Stier to step out of the truck. Leahy immediately handcuffed Stier. Stier fully cooperated with Leahy and did not act aggressively or threateningly.

Leahy took Stier over to the sidewalk and began questioning him about the backseat passenger. A few minutes later, and without requesting Stier's consent, Leahy started digging in Stier's front pockets and asked Stier if he had any needles. Stier said he did not have any and, by then, Leahy had pulled the methamphetamine from Stier's pocket.

## DISCUSSION

Stier contends the trial court should have granted his motion to suppress because the prosecution did not establish Leahy lawfully detained Stier in handcuffs and lawfully obtained Stier's consent to be searched.[4] We agree.

In reviewing a ruling on a motion to suppress, we defer to the trial court's express and implied factual findings that are supported by substantial evidence. We then independently apply constitutional principles to the trial court's factual findings to determine the legality of the search or seizure. (*People v. Glaser, supra*, 11 Cal.4th at p. 362; *People v. Varghese, supra*, 162 Cal.App.4th at p. 1096.)

When a police officer has an objective, reasonable, articulable suspicion a person has committed a crime or is about to commit a crime, the officer may briefly detain the person to investigate. The detention must be temporary, last no longer than necessary for the officer to confirm or dispel the officer's suspicion, and be accomplished using the least intrusive means available under the circumstances. (*Florida v. Royer* (1983) 460 U.S. 491, 500 [75 L.Ed.2d 229, 103 S.Ct. 1319]; *People v. Celis* (2004) 33 Cal.4th 667,

---

[4] Stier also contends the trial court should have granted his motion to suppress because the prosecution did not establish Leahy lawfully stopped Stier's vehicle. This contention is moot in light of our agreement with Stier that the prosecution did not establish Leahy lawfully detained Stier in handcuffs. If this contention were not moot, we would find no merit to it. Stier essentially challenges the trial court's factual finding that the truck's mud flaps were too small. As this factual finding is supported by substantial evidence in the form of Leahy's testimony, we must defer to it. (*People v. Glaser* (1995) 11 Cal.4th 354, 362 [45 Cal.Rptr.2d 425, 902 P.2d 729]; *People v. Varghese* (2008) 162 Cal.App.4th 1084, 1096 [76 Cal.Rptr.3d 449].)

674–675 [16 Cal.Rptr.3d 85, 93 P.3d 1027]; *In re Carlos M.* (1990) 220 Cal.App.3d 372, 384–385 [269 Cal.Rptr. 447].) A detention that does not comply with these requirements is a de facto arrest requiring probable cause. (*In re Carlos M.*, at p. 384; see also *Dunaway v. New York* (1979) 442 U.S. 200, 212 [60 L.Ed.2d 824, 99 S.Ct. 2248] [detention of defendant needed to be supported by probable cause because the detention "was in important respects indistinguishable from a traditional arrest"]; *People v. Campbell* (1981) 118 Cal.App.3d 588, 595–596 [173 Cal.Rptr. 442] [stop may be an arrest "if the restraint employed by the police goes beyond that which is reasonably necessary for a detention"].)

■ The scope of the intrusion permitted during a detention will vary with the particular facts and circumstances of each case and the prosecution has the burden of establishing a detention was lawful. (*Florida v. Royer, supra,* 460 U.S. at p. 500; *People v. Soun* (1995) 34 Cal.App.4th 1499, 1516 [40 Cal.Rptr.2d 822].) Handcuffing substantially increases the intrusiveness of a detention and is not part of a typical detention. (*United States v. Bautista* (9th Cir. 1982) 684 F.2d 1286, 1289.) Nevertheless, because a police officer may take reasonable precautions to ensure safe completion of the officer's investigation, handcuffing a suspect during a detention does not necessarily transform the detention into a de facto arrest. (*Ibid.*; *Washington v. Lambert* (9th Cir. 1996) 98 F.3d 1181, 1186; *People v. Celis, supra,* 33 Cal.4th at p. 675; *In re Antonio B.* (2008) 166 Cal.App.4th 435, 442 [82 Cal.Rptr.3d 693].) The issue is whether the handcuffing was reasonably necessary for the detention. (*In re Carlos M., supra,* 220 Cal.App.3d at p. 385.)

In deciding this question, courts consider the duration and scope of the detention. (*People v. Celis, supra,* 33 Cal.4th at p. 675.) Courts also consider the facts known to the police officer at the time of the detention to determine whether the officer's actions went beyond what was necessary to confirm or dispel the officer's suspicion of criminal activity. (*Id.* at pp. 675–676.) The same actions of a police officer might constitute a detention in one instance and an arrest in another instance. (*Washington v. Lambert, supra,* 98 F.3d at p. 1185.)

■ Generally, handcuffing a suspect during a detention has only been sanctioned in cases where the police officer has a reasonable basis for believing the suspect poses a present physical threat or might flee. (*In re Antonio B., supra,* 166 Cal.App.4th at p. 442.) The more specific the information an officer has about a suspect's identity, dangerousness, and flight risk, the more reasonable a decision to detain the suspect in handcuffs will be. (*Washington v. Lambert, supra,* 98 F.3d at p. 1190.) Circumstances in which handcuffing has been determined to be reasonably necessary for the detention include when (1) the suspect is uncooperative; (2) the officer has information

the suspect is currently armed; (3) the officer has information the suspect is about to commit a violent crime; (4) the detention closely follows a violent crime by a person matching the suspect's description and/or vehicle; (5) the suspect acts in a manner raising a reasonable possibility of danger or flight; or (6) the suspects outnumber the officers. (*Id.* at pp. 1189–1190.)

In this case, the evidence presented by the prosecution at the suppression hearing does not establish Leahy had a reasonable basis for believing Stier posed a present safety or flight risk when Leahy handcuffed Stier. Although Leahy was conducting a narcotics investigation and knew narcotics users and dealers are sometimes armed, Leahy did not believe Stier had any narcotics. More importantly, Leahy did not have any specific, articulable facts suggesting Stier was armed. Leahy also did not have any information suggesting Stier had or was about to commit a violent crime. Instead, Leahy handcuffed Stier primarily because Stier was four to five inches taller than Leahy and Leahy "felt uncomfortable" about the height differential.

 While a suspect's height may be an appropriate factor for an officer to consider in assessing whether the suspect poses a present physical threat, the parties have not cited to and we have been unable to locate any published case in which a person's height alone was considered an officer safety threat. In addition, at the suppression hearing, the prosecution did not ask and Leahy did not explain why Leahy's height differential with Stier, whom Leahy characterized as "very cooperative," "very easygoing," "very docile," "very polite," and "very mellow," created a sufficient officer safety concern to warrant the substantially increased intrusiveness of handcuffing. Similarly, the prosecution did not ask and Leahy did not explain why Leahy did not pat Stier down for weapons before deciding whether to use handcuffs during the detention. A patdown, while also intrusive, would have been less intrusive than handcuffing and more consistent with Stier's demeanor and Leahy's level of suspicion about the likelihood Stier was armed. We note in a recent similar vehicle stop case, the detaining officer addressed his safety concerns in this manner rather than handcuffing the suspect. (See, e.g., *People v. Collier* (2008) 166 Cal.App.4th 1374, 1378 [83 Cal.Rptr.3d 458].)

In light of these evidentiary omissions, we conclude the prosecution did not establish Leahy's handcuffing of Stier was reasonably necessary to the detention. (*In re Carlos M., supra,* 220 Cal.App.3d at p. 385.) Because the prosecution did not establish the detention was lawful and Leahy did not have probable cause to search Stier at the time Leahy handcuffed Stier, Stier's subsequent consent to the search was not voluntary. Accordingly, the trial court erred in denying Stier's motion to suppress the evidence obtained during the search. (*In re Antonio B., supra,* 166 Cal.App.4th at p. 438; *People v. Valenzuela* (1994) 28 Cal.App.4th 817, 833 [33 Cal.Rptr.2d 802].)

## DISPOSITION

The judgment is reversed.

Haller, J., and O'Rourke, J., concurred.

A petition for a rehearing was denied November 25, 2008, and respondent's petition for review by the Supreme Court was denied February 18, 2009, S169097. George, C. J., did not participate therein.