Filed 2/10/15  P. v. Walton CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ROBERT L. WALTON,<br><br>    Defendant and Appellant. | A141180<br><br>(San Francisco County<br>Super. Ct. No. SCN220955) |

Robert L. Walton challenges the denial of his motion to suppress evidence seized from him after he was detained by police.  Walton's sole contention on appeal is that the police's use of excessive force converted an admittedly permissible investigative detention into a de facto arrest.  He claims the trial court erred in denying his motion to suppress and seeks reversal of his conviction so that he may withdraw his guilty plea.[1]

We conclude that under the circumstances of this case, the actions of the police did not convert the detention into a de facto arrest.  Accordingly, we will affirm.

---

[1] Although Walton's conviction was entered after a negotiated disposition in which he pleaded guilty to one of the charges against him, this does not preclude him from challenging the denial of his motion to suppress.  (Pen. Code, § 1538.5, subd. (m) ["A defendant may seek further review of the validity of a search or seizure on appeal from a conviction in a criminal case notwithstanding the fact that the judgment of conviction is predicated upon a plea of guilty."]; Cal. Rules of Court, rule 8.304(b)(4)(A) [no certificate of probable cause required for appeal from denial of motion to suppress under Pen. Code, § 1538.5].)

FACTUAL AND PROCEDURAL BACKGROUND

At the preliminary hearing San Francisco Police Officer Craig Tiffe testified that at 5:46 p.m. on June 1, 2013, he and his partner Officer Eric Reboli were at 16th and Mission Streets, looking for narcotics activity. Officer Tiffe had a crime alert notification advising that on May 21, 2013, two suspects had robbed two victims at the Eula Hotel on 16th Street. The notification gave descriptions of the two suspects, who were identified as David Jason White and Rachael Barnes. It also included images taken from the hotel's surveillance system.

While at 16th and Mission, Officer Tiffe saw Barnes, whom he knew "by name and by person[.]" Standing with Barnes was an adult African-American man who matched the general description of the crime alert notification. Officer Tiffe directed Officers Obidi and Mayo to detain the man to determine his identification. While Officer Tiffe continued his surveillance, Officers Obidi and Mayo approached the man, who was later identified as Walton. When Walton saw the officers, he "quickly walked away." Walton began to run when Officer Obidi ordered him to stop.

As Walton and the officers ran down 16th Street, Officer Obidi ordered him to stop "or he would strike him with his department-issued baton." When Walton refused to stop, Obidi struck him with the baton. As Walton and Obidi struggled at the southwest corner of 16th and Hoff Streets, Walton reached toward the area of his waist band. Officer Mayo arrived to assist Officer Obidi. Either Officer Obidi or Officer Mayo attempted a carotid restraint on Walton, who was subsequently struck again with the baton. During the course of the struggle, Officer Obidi heard a metallic object strike the pavement. The metallic object was a loaded firearm.

Walton was arrested and handcuffed while he lay on the ground. A search of his person uncovered suspected heroin, marijuana, and pills. Officers also seized a distinctive key chain and a cell phone. Officers Tiffe and Reboli searched Walton's car, which was parked at 16th and Mission. The officers found suspected cocaine, narcotics paraphernalia, ammunition, and various articles of clothing. The clothing found in the car matched that worn by the male suspect in the Eula Hotel surveillance video.

On October 1, 2013, the San Francisco District Attorney filed an information charging Walton with: possession of heroin and cocaine base while armed with a firearm (Health & Saf. Code, § 11370.1, subd. (a); count one); possession of heroin (Health & Saf. Code, § 11350, subd. (a); count two); possession of a firearm by a felon (Pen. Code, § 29800, subd. (a)(1); count three); carrying a concealed firearm by a convicted person (Pen. Code, § 25400, subd. (a)(2); count four); carrying a loaded firearm by a convicted person (Pen. Code, § 25850, subd. (a); count five); and misdemeanor resisting a peace officer in the performance of his duties (Pen. Code, § 148, subd. (a)(1); count six). The information also alleged two strike priors (Pen. Code, §§ 667, subds. (d) & (e), 1170.12, subds. (b) & (c)) and four prior prison terms (Pen. Code, § 667.5, subd. (b)). At arraignment, Walton pleaded not guilty and denied all enhancements.

On November 20, 2013, Walton filed a motion under Penal Code section 1538.5 to suppress evidence. On January 31, 2014, the court denied the motion.

On February 3, 2014, pursuant to a negotiated disposition, Walton pleaded guilty to possession of firearm by a felon (count three). All other counts and enhancements were dismissed in the interests of justice.

On February 26, 2014, the court sentenced Walton to the low term of 16 months. Because Walton's presentence credits exceeded his sentence, the court deemed his sentence to have been served.

On February 27, 2014, appellant filed timely notice of appeal.

DISCUSSION

Walton's sole argument on appeal is that the police's use of excessive force subjected him to a de facto arrest that was not supported by probable cause. We will briefly set out our standard of review and the governing legal principles before analyzing Walton's contention.

I.      *Standard of Review and Governing Law*

"In ruling on a motion to suppress, the trial court must find the historical facts, select the rule of law, and apply the rule to the facts in order to determine whether the law as applied has been violated. [Citation.] We review the trial court's resolution of the

3

factual inquiry under the deferential substantial evidence standard. [Citation.] Selection of the applicable law is a mixed question of law and fact that is subject to independent review. [Citation.]" (*People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 284.) Evidence challenged as having been obtained as a result of an unreasonable search or seizure may be suppressed only if it was seized in violation of the Fourth Amendment to the federal Constitution. (*People v. Camacho* (2000) 23 Cal.4th 824, 847 (*Camacho*).)

"It is the People's burden to justify a warrantless search." (*People v. Schmitz* (2012) 55 Cal.4th 909, 915, fn. 4.) The defendant has the burden of filing a motion asserting the absence of a warrant, and if the People offer a justification for the warrantless search, of presenting arguments as to why the People's justification is inadequate. (*Ibid*.)

"A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." (*People v. Souza* (1994) 9 Cal.4th 224, 231 (*Souza*).) The reasonable suspicion necessary to justify a brief, investigative detention is less than that required to establish probable cause to arrest. (*Id*. at p. 230.) " '[T]he determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior.' [Citation.]" (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 146.) Possible innocent explanations for the circumstances relied on by a police officer do not necessarily preclude the possibility of a reasonable suspicion of criminal activity. (*Ibid*.) The question is not whether particular conduct is innocent or guilty but rather the degree of suspicion that attaches to particular noncriminal acts. (*Id*. at p. 147.)

A general description of a suspect, when combined with other circumstances known to the officer, may justify a detention. (*In re Carlos M.* (1990) 220 Cal.App.3d 372, 381-382 (*Carlos M.*).) Such circumstances include being near the crime site and in the presence of a person who closely resembles a described suspect. (*Id*. at p. 382.) Evasive actions by a suspect may also support an officer's suspicion that criminal activity

4

is afoot and that the suspect is involved in that activity. (*Souza, supra,* 9 Cal.4th at p. 241.)

"[A]n investigative detention may, at some point, become so overly intrusive that it can no longer be characterized as a minimal intrusion designed to confirm quickly or dispel the suspicions which justified the initial stop. [Citation.] When the detention exceeds the boundaries of a permissible investigative stop, the detention becomes a de facto arrest requiring probable cause. [Citation.] However, there is no hard and fast line to distinguish permissible investigative detentions from impermissible de facto arrests. Instead, the issue is decided on the facts of each case, with focus on whether the police diligently pursued a means of investigation reasonably designed to dispel or confirm their suspicions quickly, using the least intrusive means reasonably available under the circumstances. [Citations.]" (*Carlos M., supra,* 220 Cal.App.3d at pp. 384-385.) The police may restrain a suspect under detention when he is suspected of having committed a felony or when restraint is reasonably necessary to effect the detention. (*People v. Celis* (2004) 33 Cal.4th 667, 676 (*Celis*) [police may draw their guns or use handcuffs when stopping someone suspected of committing a felony]; *Carlos M., supra,* at p. 385 ["the issue is whether the restraint employed exceeded that which was reasonably necessary for the detention"].)

We now apply these principles to the case before us.

II.  *Walton's Detention Did Not Exceed the Boundaries of a Permissible Investigative Stop.*

Walton concedes that once he broke into a run, the police had a reasonable basis to suspect that he might have been involved in criminal activity. He further concedes the officers "were permitted under the Fourth Amendment to briefly detain [him] to investigate that suspicion, by confirming his identity." He nevertheless argues that the officers subjected him to a de facto arrest, unsupported by probable cause, when they used excessive force on him. Walton objects in particular to the attempted carotid restraint. In his view, "the amount of force applied by [the officers] in the present case transformed what would have been a lawful detention (requiring less than probable

5

cause) into an arrest (requiring probable cause)." (*People v. Rivera* (1992) 8 Cal.App.4th 1000, 1007.)

Walton contends the only circumstance that arguably would have supported the police's use of intrusive means to effect the stop was his flight from the officers.[2] While we agree his attempted flight is a significant factor, we cannot agree this was the only circumstance supporting the officers' use of force to effect the detention.

The facts known to the officers are relevant in determining whether their actions went beyond what was necessary "to quickly dispel or confirm police suspicions of criminal activity." (*Celis, supra,* 33 Cal.4th at p. 676.) A police department communication, coupled with an officer's observations at the scene, can support the decision to use force to effect a detention. (See *People v. Soun* (1995) 34 Cal.App.4th 1499, 1518-1519 (*Soun*) [police department communication and officer's observations at scene supported officer's decision to remove suspect from car at gunpoint, to make him lie on the ground, and to place him in handcuffs in patrol car; police actions did not convert detention into de facto arrest].) The need to prevent a suspect's flight will support a show of force by the police (*Celis, supra,* at p. 676), as will a refusal to obey police officers' commands. (*In re Antonio B.* (2008) 166 Cal.App.4th 435, 441-442.) "The more specific the information an officer has about a suspect's identity, dangerousness, and flight risk, the more reasonable a decision" to use intrusive measures will be. (*People v. Stier* (2008) 168 Cal.App.4th 21, 27 (*Stier*).)

On the day Walton was detained, Officer Tiffe had with him a police department crime alert. The alert contained photographs of two suspects in the armed robbery at the

---

[2] Walton draws a list of circumstances that will justify the police's use of intrusive means from *Washington v. Lambert* (9th Cir. 1996) 98 F.3d 1181. In that case, the Ninth Circuit set out several circumstances in which courts had "allowed the use of especially intrusive means of effecting a stop[.]" (*Id.* at p. 1189.) Obviously, we are not bound by the opinions of lower federal courts interpreting the Fourth Amendment, and we may properly look to California precedent. (*Camacho, supra,* 23 Cal.4th at p. 830, fn. 1.) In any event, the Ninth Circuit itself has explained that the circumstances set forth in *Washington v. Lambert* do not constitute an exhaustive list. (*Green v. City and County of San Francisco* (9th Cir. 2014) 751 F.3d 1039, 1047.)

Eula Hotel. It described the first suspect as a 32-year-old black male, six feet in height, and weighing 190 pounds.[3] The male suspect was believed to be David Jason White. The other suspect was a white female who was believed to be Rachael Barnes. The alert reported that the male suspect had forced his way into a hotel room, pointed a silver handgun at the victim, and stolen two backpacks after hitting the victim with the handgun.

While at 16th and Mission Streets, Officer Tiffe recognized Barnes, whom he knew "by name and by person[.]" Thus, Walton was himself suspected of having committed armed robbery (a felony), was in the company of the other person identified in the alert as a suspect in that armed robbery, and was near the scene of the earlier crime. (*Celis, supra,* 33 Cal.4th at p. 676 [police may use force to detain individual suspected of felony]; *Soun, supra,* 34 Cal.App.4th at pp. 1518-1519 [police department letter and observations of crime scene supported use of force].) Walton also matched the general description of the first suspect in the crime alert, and that suspect had been armed with a gun. (*Stier, supra,* 168 Cal.App.4th at p. 27 [more intrusive detention permitted where police have reasonable basis to believe suspect poses physical threat].) When Walton saw the police, he fled and then refused their orders to stop. (*Celis, supra,* at p. 676 [show of force reasonable to prevent suspect's flight]; *In re Antonio B., supra,* 166 Cal.App.4th at pp. 441-442 [refusal to obey police orders supports use of intrusive measures].) Given these facts, the record does not support Walton's contention that the police used excessive force in detaining him. (See *People v. Johnson* (1991) 231 Cal.App.3d 1, 13 [where defendant fled and refused to obey police commands, police

---

[3] At the preliminary hearing, Walton was described as either six feet, one inch or six feet, two inches tall and weighing 220 pounds. At the time of his arrest, he was 36 years old. Although Walton did not exactly match the description in the crime alert, the officers were justified in detaining him because he matched the general description of the first suspect in the Eula Hotel robbery. (See *People v. Craig* (1978) 86 Cal.App.3d 905, 911-912.) In addition, he was seen with Barnes, who had been identified as a suspect in the robbery and who was known to Officer Tiffe. (See *Carlos M., supra,* 220 Cal.App.3d at p. 382 [defendant's proximity to specifically described suspect near site of crime provided grounds to detain].)

used reasonable force when two officers subdued defendant by wrestling with him for five minutes and placing him in handcuffs].)

"[I]t is inappropriate for judges to second-guess on-the-spot decisions of officers in the field under these circumstances." (*People v. Wilson* (1997) 59 Cal.App.4th 1053, 1063.) We are particularly disinclined to do so in this case, given the obvious public safety concerns present when an incident occurs in a congested urban area at a time when there is "very busy traffic." (See *People v. Turner* (2013) 219 Cal.App.4th 151, 169 [court considered threat to public safety posed by suspected gun possession on high school grounds during crowded football game; police justified in detaining and handcuffing suspect at gunpoint].)

We therefore hold the trial court did not err in denying Walton's motion to suppress. Since we have concluded the denial was not erroneous, we need not address Walton's contention that the improper denial of the motion requires reversal so that he may withdraw his plea.

DISPOSITION

The judgment is affirmed.

8

                                 _____

                                 Jones, P.J.

We concur:

_____

Needham, J.

_____

Bruiniers, J.