Filed 10/15/15  P. v. Ruiz CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JOSEPH RUIZ,<br><br>    Defendant and Appellant. | F069553<br><br>(Super. Ct. No. PCF290775)<br><br>**OPINION** |

**THE COURT**[*]

APPEAL from a judgment of the Superior Court of Tulare County.  Stephen Drew, Judge.  (Retired Judge of the Tulare Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)

Tutti Hacking, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Stephen G. Herndon, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Poochigian, Acting P.J., Peña, J. and Smith, J.

## INTRODUCTION

Appellant Joseph Ruiz entered into a plea agreement whereby he pled no contest to possession of methamphetamine and being under the influence of methamphetamine and admitted suffering two prior strike convictions, in exchange for dismissal of a third charge and a referral to the recovery court program.  The plea agreement was reached after Ruiz's motion to suppress was denied.  Ruiz appeals, contending the trial court erred in denying the motion to suppress.  We will affirm the judgment.

## FACTUAL AND PROCEDURAL SUMMARY

An information was filed on November 27, 2013, charging Ruiz with possession of methamphetamine, possession of methamphetamine for sale, and being under the influence of methamphetamine.  The information also alleged that Ruiz had suffered two prior strike convictions.  Ruiz pled not guilty and denied the allegations.

A hearing on Ruiz's motion to suppress evidence pursuant to Penal Code section 1538.5 was heard on December 31, 2013.  Porterville Police Officer Edgar Calderon testified at the suppression hearing.  On November 1, 2013, at around 12:07 p.m., Calderon was driving on Morton Avenue when he noticed Ruiz riding a bicycle on the sidewalk against the flow of street traffic.  Calderon believed riding a bicycle on the sidewalk against the flow of traffic was a violation of Vehicle Code section 21650. [1]

Calderon effected a traffic stop; Ruiz identified himself.  Calderon thought Ruiz appeared nervous, and his voice was jittery and choppy.  Ruiz was wearing loose-fitting clothing, which Calderon thought could conceal a weapon.  Based upon Ruiz's demeanor and his clothing, Calderon conducted a patdown search of Ruiz.  During the patdown, Calderon instructed Ruiz to interlace his fingers, but Ruiz did not comply.

Calderon asked Ruiz if he had anything illegal inside his pockets or backpack.  Ruiz responded that he had marijuana in his backpack.  Calderon testified that in similar

---

[1]     All further statutory references are to the Vehicle Code unless otherwise specified.

2.

settings he had had people run off or fight with him to get away. At this point, Calderon placed Ruiz in handcuffs and had him sit on the curb of the sidewalk for officer safety. A second officer arrived on the scene after Ruiz had been handcuffed and seated on the curb.

Calderon retrieved the marijuana from the backpack and asked Ruiz if it belonged to him and if he had a medical marijuana card. Ruiz stated the marijuana belonged to him, but he had no medical marijuana card.

Calderon noted that Ruiz was extremely jittery and was sweating profusely; his pupils were dilated; his voice was choppy; and the inside of his mouth was coated with a white film-like substance. Based on his training, Calderon believed Ruiz had recently used a controlled substance. Calderon asked Ruiz to perform a series of tests to evaluate whether Ruiz was under the influence of a controlled substance. Ruiz did not pass the tests.

Calderon informed Ruiz he was being placed under arrest for being under the influence of a controlled substance; Calderon initiated a search incident to arrest of Ruiz's person. Inside Ruiz's left sock was a black plastic bindle wrapped around a white bindle. The white bindle contained a crystalline substance that Calderon, based upon his training, recognized as consistent with methamphetamine.

Calderon advised Ruiz of his rights pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436. Ruiz acknowledged that the bindle was methamphetamine, stated it was worth approximately $100, and that he had planned to sell it in order to "survive." Ruiz also had two cell phones; Calderon saw two text messages with drug-related contents.

From the time Ruiz was stopped until the time he was informed he was under arrest was less than five minutes.

At the conclusion of Calderon's testimony, the parties argued the motion. Defense counsel posited that the stop was invalid from its inception because section 21650, subdivision (g) specifically provides that this code section "does not prohibit the

3.

operation of bike[s] … on any sidewalk." Alternatively, defense counsel argued that even if the stop was lawful, the officer failed to act on the purpose of the stop by writing a ticket; instead, the officer immediately proceeded to conduct a patdown search and to ask questions unrelated to the stop. Defense counsel argued that any lawful detention was expanded beyond the lawful scope.

The People responded that the detention was lawful. Citing section 21650, the People stated that there was a Porterville Municipal Code that prohibited riding bicycles on any sidewalk. The People further argued that once Ruiz was stopped, Calderon noted a demeanor and clothing that justified a patdown search for officer safety. Calderon then observed signs and symptoms indicating Ruiz was under the influence of a controlled substance, and Ruiz admitted possessing a controlled substance. The additional indications of illegal activity—use and possession of a controlled substance—warranted a continued detention and eventual arrest.

The trial court found that Calderon had reasonable cause to stop Ruiz because Ruiz was in violation of the law and any detention did not exceed a reasonable amount of time. On that basis, the trial court denied the motion to suppress.

On January 13, 2014, Ruiz entered into a negotiated plea agreement. The plea agreement provided that Ruiz would plead no contest to possession of methamphetamine and being under the influence of methamphetamine and admit the two prior strike convictions, in exchange for dismissal of the possession for sale charge and a referral to the recovery court program.

Ruiz was accepted by the recovery court program on February 10, 2014. Ruiz was placed on formal probation, the conditions of which included enrollment in a substance abuse treatment program, and imposition of sentence was suspended. On April 7 and May 12, 2014, Ruiz admitted violating probation.

On May 12, 2014, Ruiz filed a petition, which this court deemed a petition for writ of habeas corpus. Ruiz asserted that his defense counsel had promised to file an appeal

4.

but had failed to do so timely; defense counsel acknowledged the error.  On June 6, 2014, this court granted relief and permitted Ruiz to file a notice of appeal and deemed the notice to be filed timely.

On June 6, 2014, Ruiz filed a notice of appeal based on the denial of the motion to suppress.

## DISCUSSION

Ruiz's sole issue on appeal is that the trial court erred in denying his motion to suppress.  Ruiz contends the initial stop and detention were unlawful, the subsequent patdown search was unlawful, and the detention was unduly prolonged.  The trial court did not err in denying the motion to suppress.

### *Standard of Review*

In reviewing a trial court's ruling on a motion to suppress, this court defers to the factual findings, express or implied, where supported by substantial evidence.  (*People v. Redd* (2010) 48 Cal.4th 691, 719 (*Redd*).)  We exercise our independent judgment in determining whether based on the factual findings the search or seizure was reasonable.  (*Ibid.*)  Ordinary traffic stops are treated as investigatory detentions for which the officer must be able to articulate specific facts justifying the suspicion that a crime is being committed.  (*People v. Hernandez* (2008) 45 Cal.4th 295, 299.)

### *Initial Detention*

Ruiz contends the initial traffic stop was unlawful because section 21650 does not preclude bicycles from being ridden on a sidewalk, or require bicycles to travel in the direction of traffic if on a sidewalk.  Section 21650, subdivision (g) provides:

> "This section does not prohibit the operation of bicycles on any shoulder of a highway, on any sidewalk, on any bicycle path within a highway, or along any crosswalk or bicycle path crossing, where the operation is not otherwise prohibited by this code or local ordinance."

One recent case held that bicycles are permitted to be operated on a sidewalk pursuant to section 21650, subdivision (g), unless prohibited by local ordinance; section

5.

21650.1 does not require that a bicycle travel in the direction of traffic if on a sidewalk. (*Spriesterbach v. Holland* (2013) 215 Cal.App.4th 255, 269-270.)

What Ruiz overlooks in his argument is that the Porterville Municipal Code prohibits the operation of bicycles on a sidewalk, and this point was argued at the suppression hearing. Porterville Municipal Code chapter 6, article I, section 6-1 states: "No bicycle shall be operated upon any public sidewalk."[2] The People argued at the suppression hearing that the Porterville Municipal Code prohibits operation of a bicycle on a sidewalk, which makes it a violation of section 21650. The invoking of the Porterville Municipal Code was not a new argument raised in the appeal; it was asserted at the suppression hearing by the People.

The fact that Calderon did not cite the Porterville Municipal Code in his testimony as the basis for stopping Ruiz is of no consequence. "[A]n officer's reliance on the wrong statute does not render his actions unlawful if there is a right statute that applies to the defendant's conduct." (*In re Justin K.* (2002) 98 Cal.App.4th 695, 700.) Further, even if the trial court was not specifically relying on the Porterville Municipal Code in denying the suppression motion, we review judicial action, not judicial reasoning. (*People v. Zapien* (1993) 4 Cal.4th 929, 976; *People v. McDonald* (2006) 137 Cal.App.4th 521, 529.)

We conclude, therefore, the initial traffic stop and detention was lawful.

***Patdown Search***

Ruiz argues Calderon had no reasonable grounds to perform a patdown search. He is mistaken. Calderon had the right to conduct a patdown search based on specific, articulable facts that warranted a patdown. (*Arizona v. Johnson* (2009) 555 U.S. 323, 327 (*Johnson*).)

---

[2] The ordinance is currently available online at <http://www.sterlingcodifiers.com/codebook/index.php?book_id=679> (as of Oct. 15, 2015).

Calderon thought Ruiz appeared nervous, and his voice was jittery and choppy. Ruiz was wearing loose-fitting clothing, which Calderon thought could conceal a weapon. Based upon Ruiz's demeanor and his clothing, Calderon conducted a patdown search of Ruiz. Calderon instructed Ruiz to interlace his fingers over his head while Calderon conducted the patdown, but Ruiz did not comply. Ruiz had been stopped for a traffic violation, midday on a public sidewalk, where presumably other people were around.

An officer has the right to conduct a brief patdown search if the officer has a reasonable belief that such a search is necessary for officer safety. (*Pennsylvania v. Mimms* (1977) 434 U.S. 106, 112; *People v. Collier* (2008) 166 Cal.App.4th 1374, 1377; *People v. Autry* (1991) 232 Cal.App.3d 365, 367-368.) Here, at the time of the patdown, Ruiz had been stopped for a traffic violation, and Calderon was alone with Ruiz, who was acting nervous and jittery, was speaking strangely, and was wearing loose-fitting clothing. Ruiz also failed to comply with directions to interlace his fingers. These specific and articulable facts to which Calderon testified were sufficient to support a finding that a reasonably prudent person under the circumstances would be warranted in the belief that the officer's or others' safety might be at risk. (*Terry v. Ohio* (1968) 392 U.S. 1, 27.)

In arguing the patdown search was not justified, Ruiz fails to consider the totality of the circumstances, instead addressing each fact in isolation. Further, the cases he cites in support of his position are not factually similar. In *Ybarra v. Illinois* (1979) 444 U.S. 85, Ybarra was one of many customers at a public tavern who was present when officers arrived to serve a warrant on the tavern owner. A patdown search of all the customers in the tavern was held to be unreasonable, since it was based on mere presence at the public tavern with no other articulable facts. (*Id.* at pp. 90-91.) In *People v. Medina* (2003) 110 Cal.App.4th 171, 175, a patdown search of a person merely because he or she happened to be present in a high-crime area was an unreasonable search.

7.

Calderon was permitted to conduct a limited search, the patdown, for purposes of officer safety based on the totality of the circumstances. (*Johnson, supra,* 555 U.S. at p. 327.)

### Length of Detention

Ruiz alternatively argues that even if the detention was lawful, it was unduly prolonged. He is incorrect.

A traffic stop may last "no longer than is necessary to effectuate the purpose of the stop." (*Florida v. Royer* (1983) 460 U.S. 491, 500.) Here, from the time Ruiz was stopped until the time he was informed he was under arrest was less than five minutes. This is a minimal amount of time, which the People argued was comparable to the time it takes to issue a traffic citation. The trial court found the amount of time to be "brief."

In assessing whether a detention is unduly prolonged, we assess whether officers pursued their investigation in a reasonable and diligent manner under the circumstances. (*United States v. Sharpe* (1985) 470 U.S. 675, 687.) The five minutes from the initial stop to when Ruiz was placed under arrest was a brief period of time, especially when one considers that the situation was swiftly developing from a traffic stop to one involving use and possession of controlled substances. (*Id.* at p. 686.)

Once again, Ruiz relies upon cases that are not factually similar. In *People v. McGaughran* (1979) 25 Cal.3d 577, an officer stopped a vehicle and questioned the driver and passenger for three to four minutes, after which the officer ran a check for outstanding warrants that lasted another 10 minutes. Thus, the detention exceeded 14 minutes. (*Id.* at pp. 581-582.) In *Willett v. Superior Court* (1969) 2 Cal.App.3d 555, 557-559, the officer detained the defendant for 40 minutes based upon a broken vehicle light. Ruiz's detention lasted a mere five minutes from initial stop to arrest.

We agree with the trial court that the detention amounting to five minutes was not unduly prolonged under the circumstances. (*People v. Williams* (2007) 156 Cal.App.4th 949, 959-960.)

*Other Contentions*

We briefly address, and reject, the other contentions raised by Ruiz. Ruiz contends that Calderon's real intent all along was to search him for contraband. What Ruiz speculates to be the true intent of Calderon is irrelevant to whether there was a lawful traffic stop and detention. The motivations of the officer are irrelevant to whether there was a lawful traffic stop and detention; the reasonableness of the traffic stop is assessed on an objective basis under the circumstances. (*People v. Suff* (2014) 58 Cal.4th 1013, 1054.)

Moreover, Ruiz was not handcuffed merely for possessing a small amount of marijuana. Calderon believed Ruiz was acting suspiciously—he was extremely nervous, his voice was jittery and choppy, he refused to comply with the officer's instructions during the patdown, and he admitted to possession of contraband. An officer may take reasonable precautions to ensure the safe completion of an investigation, which is what Calderon did in order to complete his investigation. When a suspect is uncooperative, or acts in a manner indicating possible flight or danger, handcuffing may be warranted. (*People v. Stier* (2008) 168 Cal.App.4th 21, 27-28.)

As for Ruiz's contention that the contents of his cell phone could not be searched without a warrant, that was not the state of the law at the time. At the time Ruiz was stopped in November 2013, a search incident to arrest of a cell phone was valid without a warrant and not subject to suppression. (*People v. Diaz* (2011) 51 Cal.4th 84, 101.) Subsequently, in 2014, the United States Supreme Court held that a warrant must be obtained before searching a cell phone incident to an arrest. (*Riley v. California* (2014) 573 U.S. ___, ___ [134 S.Ct. 2473, 2493].) However, searches of cell phones incident to arrest that were conducted before the *Riley* decision may be valid under a good-faith exception to the exclusionary rule. This issue is currently awaiting decision by the California Supreme Court in *People v. Macabeo* (2014) 229 Cal.App.4th 486, review

granted November 25, 2014, S221852. At this juncture, we agree that *Diaz* would support a good-faith exception to the exclusionary rule.

The initial traffic stop was lawful, the patdown search for officer safety was valid, and the detention was not unduly prolonged. During the course of the lawful detention, it became apparent to Calderon that Ruiz was under the influence of a controlled substance and placed him under arrest for that offense. After he was arrested and issued *Miranda* warnings, Ruiz was searched incident to arrest and methamphetamine was found. Ruiz then admitted he possessed the methamphetamine for sale. The offenses with which Ruiz was charged were supported by these lawful actions of Calderon's and not dependent upon the contents of the cell phone. Moreover, the content of the cell phone was irrelevant to the charges to which Ruiz pled—possession and use of methamphetamine.

### *Conclusion*

The trial court did not err in denying Ruiz's motion to suppress. (*Redd, supra,* 48 Cal.4th at p. 719.)

**DISPOSITION**

The judgment is affirmed.

10.