Filed 6/28/23  P. v. Roberson CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>JESSE ROBERSON,<br><br>  Defendant and Appellant. | 2d Crim. No. B323314<br>(Super. Ct. No. BA497602)<br>(Los Angeles County) |

Jesse Roberson appeals an order of probation granted following his nolo contendere plea to possession of an assault weapon, and possession of a firearm by a felon.  (Pen. Code, §§ 30605, subd. (a), 29800, subd. (a)(1).)[1]  We conclude that the trial court properly denied Roberson's motion to suppress evidence pursuant to section 1538.5 and affirm.

*FACTUAL AND PROCEDURAL HISTORY*

The trial court held a preliminary examination and held Roberson to answer for two counts of felony unlawful firearm

---

[1] All statutory references are to the Penal Code.

possession. Roberson later filed a motion to suppress evidence of the firearm, among other things, seized by Los Angeles police officers during Roberson's detention and arrest. On July 14, 2022, the trial court held an evidentiary hearing regarding Roberson's suppression motion. Witness testimony and a police body-camera videotape set forth this evidence:

At approximately 11:00 p.m., on the evening of April 10, 2021, Los Angeles Police Officers Robert Resurreccion and Kiyan Afshar were patrolling Manchester and Halldale Avenues in a marked patrol vehicle. The officers drove near a strip mall which contained a nightclub. They noticed Roberson standing by the open driver's door of a parked Mercedes vehicle. He appeared nervous and startled as they approached. Roberson then turned toward the interior of the vehicle and made a tossing or throwing motion.

The officers parked their vehicle and walked toward Roberson who was wearing a "tactical type vest" with an empty firearm holster, and a badge. The back of the vest was marked "Security." The officers asked Roberson if he was armed, and he responded that he was not. Concerned that Roberson discarded contraband inside the Mercedes, the officers asked him to step away from the vehicle and onto the sidewalk.

Resurreccion then decided to conduct a pat-down search of Roberson. Prior to the pat-down, Roberson informed the officers that he carried a knife on his person. Resurreccion placed Roberson in handcuffs during the pat-down and investigation.

Resurreccion then walked to the Mercedes vehicle and illuminated the inside through the fully open driver's door. Without breaching the threshold, he saw a semiautomatic handgun near the driver's seat. The officers arrested Roberson

and recovered the firearm, which had a threaded barrel and no serial number.  The firearm was a Polymer 80 "ghost gun."

The trial court admitted the body-camera videotape of the encounter into evidence at the suppression hearing.  The videotape reflects the tactical vest marked "Security" that Roberson was wearing.[2]  The videotape did not capture Roberson's nervousness or his throwing an item inside the vehicle, but it did capture discovery of the firearm inside the vehicle.[3]  The videotape also contained Roberson's explanation that he was hired to perform security for a birthday party at the nightclub.  The strip mall had illumination from streetlights, billboard lights, business lights, and vehicle headlights.  The videotape also reflects unrelated people standing or walking along the strip mall sidewalk near Roberson, his vehicle, and the officers.

The trial court concluded that the police officers had a reasonable suspicion to detain Roberson and Resurreccion observed the firearm in plain view.  The court found the testimony regarding Roberson throwing or tossing an item into the Mercedes vehicle "believable" because Resurreccion knew where to look for the firearm.  Further, the court concluded that "a reasonable logical person could conclude that the defendant tossed [the firearm] because when he saw the police coming into the lot, he knew he was not a lawfully certified guard able to

---

[2] Roberson requested that the videotape be transmitted to this court.  We reviewed the videotape.

[3] Roberson's nervous demeanor and tossing behavior occurred while the officers were driving in their patrol vehicle approaching Roberson.

carry the firearm." The court then denied Roberson's suppression motion.

On July 14, 2022, Roberson waived his constitutional rights and pleaded nolo contendere to possession of an assault weapon, and possession of a firearm by a felon. (§§ 30605, subd. (a), 29800, subd. (a)(1).) The trial court suspended imposition of sentence and placed Roberson on formal probation for two years with terms and conditions.

Roberson appeals and contends that the trial court erred by denying his suppression motion.

## DISCUSSION

Roberson argues that the officers had no constitutional basis to detain him for an investigative stop, to arrest him, or to seize the firearm.

In reviewing a ruling on a motion to suppress evidence, we defer to the court's factual findings, express or implied, if they are supported by substantial evidence. (*People v. Silveria and Travis* (2020) 10 Cal.5th 195, 232.) We exercise our independent judgment in determining whether, on the facts presented, the search or seizure was reasonable under the Fourth Amendment. (*Ibid.*)

The Fourth Amendment permits an officer to initiate a brief investigative detention when he has a particularized and objective basis for suspecting the particular person stopped of criminal activity. (*Kansas v. Glover* (2020) _ U.S. _ [206 L.Ed.2d 412, 419]; *People v. Silveria and Travis*, *supra*, 10 Cal.5th 195, 236.) Although a mere hunch does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence and obviously less than necessary for probable

4

cause. (*Ibid.*) The standard depends on factual and practical considerations of everyday life on which reasonable and prudent men act. (*Ibid.*) Reviewing courts must consider the totality of circumstances on a case-by-case basis to determine if the officer had a particularized and objective basis for his suspicion. (*United States v. Arvizu* (2002) 534 U.S. 266, 273.)

There is narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer when he has reason to believe that he is dealing with an armed and dangerous individual. (*Terry v. Ohio* (1968) 392 U.S. 1, 27.) "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." (*Ibid.*)

Roberson's detention was supported by a particularized and objective basis for suspecting him of criminal activity. The totality of circumstances indicates that Roberson displayed a nervous, startled expression at the presence of the police and tossed an item into his vehicle. When the officers stopped their patrol vehicle, they saw that Roberson wore a tactical vest marked "Security" but that his gun holster was empty. One commonsense inference from these circumstances, taken together, is that Roberson tossed a firearm into the vehicle.

Moreover, asking Roberson to step away from his vehicle and handcuffing him in order to perform a pat-down search was "warranted in the belief that [the officers'] safety . . . was in danger." (*Terry v. Ohio, supra*, 392 U.S. 1, 27.) As reflected in the body-camera videotape, Roberson was physically larger than the officers and, as he informed them, he had a knife on his person. He also began to manipulate and unzip his tactical vest

while speaking with the officers. The officers immediately asked him to turn around and the handcuffing occurred. Handcuffing a suspect during a detention does not necessarily transform the detention into an arrest. (*Washington v. Lambert* (9th Cir. 1996) 98 F.3d 1181, 1186; *People v. Stier* (2008) 168 Cal.App.4th 21, 27.)

When Resurreccion stood at the threshold of the fully open door of Roberson's vehicle, he saw a firearm in plain view. He seized the firearm and immediately identified it as a ghost weapon without a serial number. Roberson's vehicle was parked in a public parking lot and his driver's door was open. Objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure. (*Harris v. United States* (1968) 390 U.S. 234, 236.)

*DISPOSITION*

The orders denying Roberson's suppression motion and granting probation are affirmed.

NOT TO BE PUBLISHED.

GILBERT, P. J.

We concur:

YEGAN, J.

CODY, J.

6

Kevin P. Stennis, Judge

Superior Court County of Los Angeles

_____

Alice Newman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Michael J. Wise, Deputy Attorneys General, for Plaintiff and Respondent.