Jeremy Wayne **BALDWIN**, Appellant

v.

The **STATE** of Texas.

No. **PD–1630–07.**

Court of Criminal Appeals of Texas.

March 11, 2009.

---

Jesus Vargas, San Antonio, for Appellant.

Eric Kugler, Assistant District Atty., Houston, Jeffrey L. Van Horn, State's Atty., Austin, for State.

KELLER, PJ., delivered the opinion of the unanimous court.

The question here is whether an officer exceeded his authority during a suspect's detention. After asking the handcuffed suspect where his identification was located, the officer reached into the suspect's pocket to retrieve his wallet. We hold that the officer did exceed his authority, and we reverse the judgments of the courts below.

## I. BACKGROUND

### A. The Incident

The trial court denied appellant's motion to suppress evidence without making any express findings of fact. Viewed in the light most favorable to the trial court's ruling,[1] the evidence shows the following: Deputy Tommy Smith was patrolling the Turtle Lake subdivision, a "medium" crime neighborhood, at about 10:30 p.m. on November 3, 2005, when he was "flagged down by a citizen" standing outside with a phone in her hand. The middle-aged woman, whom Deputy Smith had previously seen in the neighborhood, told him that she was surprised that he had arrived so quickly. She thought that he had been dispatched after she called the police.

The woman said that "she had spotted a white male dressed all in black walking around looking into houses," and she did not recognize him to be from the neighborhood. Deputy Smith did not know whether the woman meant that the person was looking into houses from the sidewalk or

1. *Guzman v. State,* 955 S.W.2d 85, 87–89 (Tex.Crim.App.1997).

walking up to the windows to look inside. The woman knew, as did Deputy Smith, that there had been several burglaries in the neighborhood, and she told Deputy Smith that she didn't know if the white male "was a part of it or not, but he may have been." After this conversation, Deputy Smith drove off in the direction in which the woman had seen the man walking.

A few blocks away, Deputy Smith encountered appellant, who matched the description the woman had given him. Appellant was dressed all in black and walking down the sidewalk. After seeing Deputy Smith and making eye contact, appellant "began a very fast walking pace away from" the officer. Deputy Smith stopped his patrol car, got out, and walked up to appellant. The deputy told appellant about the citizen's call, asked where he lived, and asked for his identification. Appellant did not respond to the question about where he lived, but he asked why the officer wanted to see his identification, and he looked "nervous." [2] Based on his past experience, Deputy Smith determined that appellant was anxious and nervous to a degree that "usually means he is going to fight or he is going to run." Appellant's behavior was consistent with that of other uncooperative persons Deputy Smith had encountered, and as a result, the deputy was "in fear of [his] life."

At that point, Deputy Smith handcuffed appellant for "officer safety" and asked where his identification was. Appellant replied that it was in his right pants pocket. Deputy Smith considered that response to constitute permission to reach into appellant's pocket, so he did, and he retrieved a small wallet. Appellant's driver's license was in the wallet inside a clear plastic case, and Deputy Smith took the license out of the case to examine it. At that point, he saw a small baggie with white powder in it behind the license. When Deputy Smith took the baggie out of the case, appellant said, "That dope is not mine. I found it." The white powder field-tested positive for cocaine.

### B. Court of Appeals Opinion

After the motion to suppress was denied, appellant pled guilty pursuant to an agreement. He then appealed. Upholding the trial court's ruling on the motion to suppress, the court of appeals found that the circumstances that were related to the officer by the citizen and observed by the officer before appellant was handcuffed were sufficient to give rise to reasonable suspicion to detain him for further investigation.[3] The court of appeals also found that the momentary intrusion into appellant's pants pocket to retrieve his wallet "was a minimal, necessary, and reasonable encroachment upon appellant's liberty under the circumstances." [4]

## II. ANALYSIS

We do not need to decide whether Deputy Smith effectuated an arrest or an investigative detention, nor do we need to decide whether reasonable suspicion existed to support an investigative detention. There was no valid basis for an arrest, and, assuming arguendo that there was a

---

**2.** Deputy Smith described appellant's nervousness as being "nervous with his hands, lot of movement with his hands, speaking fast, looking, eyes not—head not turning, but eyes scanning the area." In addition, appellant did not look Deputy Smith in the eye during this interaction.

**3.** *Baldwin v. State,* 237 S.W.3d 808, 812–14 (Tex.App.-Houston [14th Dist.] 2007).

**4.** *Id.* at 814.

valid basis for an investigative detention, there was no valid basis for reaching into appellant's pocket to procure his wallet.

 Had there been a valid arrest, Deputy Smith's act of reaching into appellant's pocket would have qualified as a "search incident to arrest." [5] But to effectuate a valid arrest, an officer must at that time have "probable cause to believe that a criminal offense has been or is being committed" by the person in question.[6] The ultimate determination of whether probable cause exists is subject to *de novo* review on appeal.[7] Probable cause is a "fluid concept" that cannot be "readily, or even usefully, reduced to a neat set of legal rules." [8] Though the concept evades precise definition, it involves "a reasonable ground for belief of guilt" that is "particularized with respect to the person to be searched or seized." [9] "Probable cause" is a greater level of suspicion than "reasonable suspicion" and requires information that is more substantial in quality or content and a greater reliability with respect to the source of information.[10] At least in the context of searches, probable cause involves "a fair probability that contraband or evidence of a crime will be found." [11] Probable cause is a relatively high level of suspicion, though it falls far short of a preponderance of the evidence standard.[12]

 At the time he reached into appellant's pocket, Deputy Smith had the following information: (1) a woman he knew by sight was so concerned about an unknown man walking in the neighborhood that she called the police, (2) appellant fit the general description given by the woman, (3) appellant was dressed all in black, (4) appellant was looking into houses, but the officer had not ascertained from what vantage point this took place, (5) there had been several recent burglaries in the area, (6) the area was a "medium" crime neighborhood, (7) it was 10:30 at night, (8) upon seeing the deputy, appellant began to walk more quickly, (9) appellant was very nervous, glancing around, scanning the area, and refusing to make eye contact with the deputy, and (10) appellant asked why he needed to present his identification. We conclude that these circumstances did not give rise to the relatively high level of suspicion that would constitute probable cause to arrest. Because Deputy Smith did not have probable cause to arrest at the time, reaching into appellant's pocket cannot be justified by the "search incident to arrest" doctrine.

 A valid investigative detention can confer upon an officer the authority to pat down the suspect for weapons.[13] Under the "plain feel" doctrine, an officer conducting a pat-down may seize an object "whose contour or mass makes its identity immediately apparent" as contraband.[14]

---

5. *Chimel v. California*, 395 U.S. 752, 762–63, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

6. *Devenpeck v. Alford*, 543 U.S. 146, 152, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004).

7. *Guzman*, 955 S.W.2d at 87–88.

8. *Maryland v. Pringle*, 540 U.S. 366, 370–71, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003).

9. *Id.*

10. *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990).

11. *Id.*

12. *See Pringle*, 540 U.S. at 371, 124 S.Ct. 795 (*quoting Illinois v. Gates*, 462 U.S. 213, 235, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).

13. *See Terry v. Ohio*, 392 U.S. 1, 29, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

14. *Minnesota v. Dickerson*, 508 U.S. 366, 375–76, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). An officer may not, however, manipulate the unseen item to determine its identity as contraband. *Id.* at 378–79.

But when the conditions of the "plain feel" doctrine (or the "plain view" doctrine) are not present, an officer conducting a valid investigative detention must have probable cause in order to conduct a search for non-weapon contraband or other evidence.[15] For the same reason that Deputy Smith lacked probable cause to arrest, he also lacked probable cause to search for non-weapon contraband or other evidence. Though an officer may ask a defendant to identify himself during a valid investigative detention,[16] that does not automatically mean that the officer can search a defendant's person to obtain or confirm his identity. Consequently, the officer's conduct of reaching into appellant's pocket—even under a valid investigative detention—was an illegal search unless there existed some exception to the usual probable cause requirement.

██ The only exception worthy of discussion in this case is consent. As mentioned above, Deputy Smith believed that appellant's answer to a question regarding the location of his identification constituted permission to retrieve that identification. We find this belief to be objectively unreasonable. Appellant's response was simply an answer to the officer's question (after being handcuffed) and not a consent for the officer to search his person.[17]

We reverse the judgments of the courts below and remand the case to the trial court for further proceedings consistent with this opinion.

KEASLER, J., filed a concurring opinion in which HERVEY, J., joined.

COCHRAN, J., filed a concurring opinion.

### CONCURRING OPINION

KEASLER, J., filed a concurring opinion in which HERVEY, J., joined.

I join the Court's opinion but write separately to respond to Judge Cochran's concurring opinion. I cannot endorse Judge Cochran's determination that this was an invalid arrest, as opposed to an unlawful detention. She contends that Baldwin was arrested once Deputy Smith placed Baldwin in handcuffs. Placing an individual in handcuffs, as Judge Cochran acknowledges, however, does not necessarily mean that the individual is under arrest. If we were required to decide whether there was a detention or arrest, I would hold that Baldwin was illegally detained because Deputy Smith lacked the requisite reasonable suspicion under the particular facts of this case. Baldwin, in my view, was detained within the meaning of the Fourth Amendment when Deputy Smith handcuffed him.[1] At that point, Deputy Smith, given the totality of the circumstances, lacked reasonable suspicion to detain Bald-

---

15. *Id.* (discussing *Arizona v. Hicks,* 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987))(Though officer in *Hicks* had the right to be where he was, he could not move a stereo to reveal its serial numbers without probable cause to believe that it was stolen.).

16. *See Hiibel v. Sixth Judicial Dist. Court,* 542 U.S. 177, 187, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004)("The principles of *Terry* permit a State to require a suspect to disclose his name in the course of a *Terry* stop.").

17. *See Kaupp v. Texas,* 538 U.S. 626, 631, 123 S.Ct. 1843, 155 L.Ed.2d 814 (2003)(Suspect's "okay" in response to officer's statement that "we need to go and talk" was a "mere submission to a claim of lawful authority" rather than consent to accompany the officer.).

1. *But see Muehler v. Mena,* 544 U.S. 93, 99, 125 S.Ct. 1465, 161 L.Ed.2d 299 (2005) ("The imposition of correctly applied handcuffs to Mena, who was already being lawfully detained during a search of the house, was undoubtedly a separate intrusion in addition to the detention in the converted garage.").

win in any manner, with or without hand-cuffs. Therefore, I believe that Judge Cochran is sorely mistaken when she characterizes this as an arrest. By needlessly leaping from detention to arrest without justification, Judge Cochran unnecessarily muddles Fourth Amendment seizure law.

## OPINION

COCHRAN, J., filed a concurring opinion.

I join the majority opinion although it resolves this case on a basis not specifically raised by the parties. I think that it is important also to address one particular issue presented in appellant's petition for discretionary review: Was appellant "arrested" without probable cause when Deputy Smith handcuffed him? Given the circumstances in this particular case, I believe that he was "arrested" at the moment he was handcuffed.

## I.

As the majority notes, Deputy Smith stopped his patrol car when he saw a man—appellant—who matched the description given to him by the unidentified woman. He got out, approached appellant, and asked him for his ID. Instead, appellant asked Deputy Smith why he wanted to see his ID. Deputy Smith described what happened next:

Q. So, you asked him for his identification and he didn't—did he provide you his identification at that point?

A. At that point he became nervous and anxious and at that point I handcuffed him.

Deputy Smith testified that he handcuffed appellant for "officer safety." He said, "I handcuffed him for officer safety because my past experience when an individual becomes nervous and anxious in the manner that he was acting and scanning the area, that usually means he is going to fight or he is going to run." Deputy Smith also noted that appellant's behavior was consistent with behavior that he had seen before from "uncooperative persons" and that he was placed in "fear of [his] life." [1] Deputy Smith said that he is 5'4" tall, weighs 180 pounds, and has received training to prevent someone from taking his weapon.

Once Deputy Smith handcuffed appellant, he asked him where his ID was. Appellant told him "that it was in his pants pocket," so Deputy Smith reached into the pocket and retrieved a small wallet. The license was in the wallet inside a pocket with a clear plastic covering, and Deputy Smith took the license out of the pocket to examine it. At that point, he saw a small baggie with white powder in it behind the license.

The trial court denied appellant's motion to suppress and the court of appeals affirmed.[2] Justice Anderson dissented and

1. On cross-examination Deputy Smith elaborated on his fear:
 Q. And you are saying the only thing that put you in fear of your life is that he was nervous, shaking, and shuddering?
 A. Yes. * * *
 Q. So, is it your testimony today that you would nearly handcuff any suspect if you see him nervous, shuddering and shaking?
 A. Yes, I will.
 Q. That is your standard procedure?
 A. Yes, it is.

 Q. Is that the kind of training that you received through the Harris County Sheriff's Department?
 A. Yes, it is.
 Q. They said, If you see someone shaking, shuddering and nervous, you have the right to handcuff them?
 A. Yes, it is, if I am in fear of my life I have a right to handcuff them.

2. *Baldwin v. State*, 237 S.W.3d 808 (Tex.App.-Houston [14th Dist.] 2007).

concluded, *inter alia*, that appellant was arrested when he was handcuffed.[3]

## II.

I agree with the majority that, in this case, we need not decide whether Deputy Smith had reasonable suspicion to support an investigative detention because, even if the detention were reasonable under the Fourth Amendment, the handcuffing was neither necessary nor reasonable under these particular circumstances.

The State argues that Deputy Smith handcuffed appellant based on "officer safety." "Officer safety" is a legitimate purpose. However, the need for handcuffing and the threat to officer safety must not be imagined or objectively unreasonable under the particular circumstances. Nor may it be done simply because a citizen declines an officer's request to see his identification, Deputy Smith agreed that appellant's objection to being asked for his identification was lawful and that he

could have "kept going home" at that point.

The reasonableness of the use of handcuffs depends, in particular, on whether handcuffs are reasonably necessary to "allow the officer to pursue his investigation without fear of violence[.]"[4] On the other hand, the use of handcuffs may escalate a citizen encounter or investigative detention into an arrest if there is no evidence that the suspect is dangerous or poses a flight risk.[5]

In *State v. Sheppard*,[6] we recently held that a person is not necessarily "arrested" for purposes of the Fourth Amendment if he is temporarily handcuffed and detained, but then released.[7] We explained that handcuffing a person who has been temporarily detained "is not ordinarily proper, but yet may be resorted to in special circumstances, such as to thwart the suspect's attempt to 'frustrate further inquiry.'"[8] In *Sheppard*, we concluded that temporarily handcuffing the suspect "for officer safety" while the officer conducted a brief walk-through of the defendant's

---

**3.** *Id.* at 821 (Anderson, J., dissenting) (stating that "if the force utilized exceeds that reasonably necessary to effect the goal of the stop, this force may transform an investigative detention into a full-blown arrest.").

**4.** *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). As the Fifth Circuit explained in *United States v. Jordan*, 232 F.3d 447 (5th Cir.2000):

Handcuffing a suspect does not automatically convert an investigatory detention into an arrest requiring probable cause. The relevant inquiry is whether the police were unreasonable in failing to use less intrusive procedures to safely conduct their investigation. Here the officers first asked Jordan to place his hands on the hood of the car, but he refused to do so. He was acting nervously, saying "wait, wait" in response to the officers' questions, moving his hands erratically, and continuously looking over his shoulder. When one officer grabbed Jordan's arm and told him to calm down,

Jordan jerked his hand away and walked towards the officers in "an aggressive-type manner."

*Id.* at 450 (cites omitted). Given both the suspect's degree of physical uncooperativeness and his "aggressive" manner toward the officers, the Fifth Circuit held that the officers did not act unreasonably in handcuffing the suspect who was being investigated for the violent crime of robbery. *Id.*

**5.** *See United States v. Del Vizo*, 918 F.2d 821, 825 (9th Cir.1990) (handcuffing was an important factor in determining that an arrest had occurred because there was no evidence that suspect was particularly dangerous).

**6.** 271 S.W.3d 281 (Tex.Crim.App.2008).

**7.** *Id.* at 283.

**8.** *Id.* at 289 n. 29 (quoting 4 WAYNE R. LAFAVE, SEARCH AND SEIZURE, § 9.2(d), at 311–13 (4th ed.2004)).

trailer to determine whether a third person was present was reasonable under the totality of the circumstances.[9] In that case, the officer had talked to the alleged victim of an aggravated assault who told him that the defendant had just threatened him with a "big knife" while he and the defendant, along with a woman, were "doing some speed."[10] When the defendant opened his door, the officer immediately smelled a "very strong chemical odor coming out of the trailer," so he frisked the defendant and found a large folding knife in his front pocket.[11] Because the assault victim's statements that the defendant had a large knife and that they were "doing speed" had both been corroborated by the officer's own observations, the officer was concerned about the third person-the woman with whom both men were "doing speed." Based on the evidence that the defendant had been armed and may have been involved in drug manufacturing (for which weapons are frequently used to protect the product), we concluded that the officer was objectively reasonable in temporarily handcuffing the defendant for "officer safety" while he looked for the missing woman in the trailer.[12] Thus, there were several specific facts that supported the objective reasonableness of the officer's conduct under the totality of the circumstances.

We have also held that handcuffs were consistent with a detention, rather than an arrest, under circumstances such as when an officer was left alone with a suspect at night after his partner had left the scene to chase an accomplice,[13] and when an officer was called to a possible burglary at an apartment and was alone with two much larger suspects.[14] Reports of gunfire in the area, along with suspicious behavior, have led us to conclude that handcuffing was appropriate.[15] In each of those cases, the officer had specific, articulated reasons to fear for his safety.

Like the officers in *Rhodes, Mays*, and *Balentine*, Deputy Smith was alone at night when he met appellant, but the similarities end there. Deputy Smith articulated no reason to suspect that appellant was carrying any type of weapon,[16] burglary is not an inherently violent crime, and Deputy Smith was not outnumbered. Appellant was not combative; he was not hiding his hands or reaching for his pockets; he did not attempt to flee.[17] The only fact that Deputy Smith articulated for "fearing for his life" was that appellant was anxious, nervous, and glancing around the area. The fact that a pedestrian is nervous when approached by a police officer at night, without more, is insufficient reason to handcuff him. But Deputy Smith testified that his standard procedure

---

9. *Id.* at 291.

10. *Id.* at 284.

11. *Id.*

12. *Id.* at 288.

13. *Rhodes v. State*, 945 S.W.2d 115, 117–18 (Tex.Crim.App.1997).

14. *Mays v. State*, 726 S.W.2d 937, 943–44 (Tex.Crim.App.1986).

15. *Balentine v. State*, 71 S.W.3d 763, 771 (Tex.Crim.App.2002).

16. Deputy Smith's testimony did not indicate that the prior burglaries involved any weapons and the unnamed woman made no report of seeing a weapon, as was the situation in *Balentine*.

17. Although appellant started walking briskly away when he first saw Deputy Smith, he voluntarily stopped to talk to the officer when approached, which would seem to dispel the notion that he was a flight risk.

is to handcuff any suspect that he sees is "nervous, shuddering, and shaking."

I am reluctant to second-guess police officers who must make split-second decisions based upon the particular circumstances they encounter on the street. But I cannot uphold Deputy's Smith's routine handcuffing procedure, and I cannot find that the totality of the circumstances made handcuffing appellant an objectively reasonable response to appellant's nervousness or his questioning of Officer Smith. Here, unlike the situation in *Sheppard,* the

officer did not have any specific facts suggesting that appellant was armed, had committed a violent offense, or was about to do so. Because the handcuffs were not reasonably necessary to further a legitimate purpose of a temporary detention or for "officer safety," once Deputy Smith handcuffed appellant, the encounter or detention became a *de facto* arrest.[18] And, as the majority correctly concludes, Deputy Smith did not have probable cause to arrest appellant at the time that he searched his wallet, much less at the time that he handcuffed him.

18. *See, e.g., People v. Stier,* 168 Cal.App.4th 21, 28, 85 Cal.Rptr.3d 77 (2008) (officer's act of handcuffing drug suspect during temporary detention because suspect was much taller than officer was not reasonably necessary; officer did not have any specific articulable facts suggesting suspect was armed or about to commit a violent crime, act of handcuffing converted detention into a *"de facto* arrest" that was unsupported by probable cause; therefore, suspect's subsequent consent to search was not voluntary); *In re Antonio B.,* 166 Cal.App.4th 435, 82 Cal.Rptr.3d 693, (Cal.App.2008) (when officer handcuffed teenager who was walking down street with a friend who was smoking a marijuana cigarette, he converted temporary detention into *de facto* arrest without probable cause; subsequent consent to search his pocket was therefore invalid; detective's "policy" of handcuffing any suspect he detains for further investigation regardless of the circumstances of the stop ignores the constitutional directive that "a detention based upon reasonable suspicion of criminal activity must be conducted using the least intrusive means reasonably available under the circumstances of that particular detention."); *Longshore v. State,* 399 Md. 486, 924 A.2d 1129, 1145 (2007) (handcuffing suspect converted temporary detention on suspicion of drug possession into *de facto* arrest as defendant "was neither a flight nor safety risk"); *Cocke v. State,* 889 So.2d 132, 135 (Fla.App.2005) (appellate court assumed without deciding that defendant was lawfully stopped in the first place, but the detention turned into a *de facto* arrest, without probable cause, when defendant was handcuffed, placed inside of the

patrol car, and detained for a significant period of time); *Baggett v. State,* 849 So.2d 1154, 1157 (Fla.App.2003) (defendant detained on suspicion of burglary based on anonymous citizen's report, but when officer did not pat down suspect and there was no evidence that "threatening circumstances existed," handcuffing suspect for duration of investigation converted detention into *de facto* arrest); *State v. Pfleiderer,* 8 S.W.3d 249, 256 (Mo. App.1999) (even if police properly detained defendant based on anonymous tip, handcuffing him converted detention into *de facto* arrest for which there was no probable cause); *United States v. Acosta–Colon,* 157 F.3d 9, 18 (1st Cir.1998) (handcuffing of suspected drug trafficker at airport simply because a drug suspect might be armed and dangerous converted temporary detention into *de facto* arrest; government's "factually unanchored justification" was "generalizable to virtually *every* investigatory stop involving a drug suspect. To accept that purported justification here would therefore be to endorse the use of handcuffs in *every* investigatory stop initiated upon an articulable suspicion of drug trafficking."); *United States v. Smith,* 3 F.3d 1088, 1094 (7th Cir.1993) (seizure involving use of handcuffs may be upheld as *Terry* stop "in the 'rare' case wherein common sense and ordinary human experience convince us that an officer believed reasonably that an investigative stop could be effectuated safely only through the use of handcuffs."); *see generally* 4 LaFave, Search & Seizure § 9.2(d), at 311–13.

Thus, I join the majority in reversing the judgments of the courts below.