**Opinion issued September 3, 2015**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-14-00333-CR
_____

**REGINALD HUTCHINS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

On Appeal from the 230th District Court
Harris County, Texas
Trial Court Case No. 1388778

---

## DISSENTING OPINION

This case requires us to determine whether there was clear and convincing

evidence to support the trial court's finding that appellant, Reginald Hutchins,

"verbally consented" to the warrantless search of his automobile that turned up the

evidence upon which he was subsequently convicted of possession of a controlled substance with intent to deliver. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.104(a)(4) (Vernon Supp. 2014); *id.* § 481.114(a) (Vernon 2010). The majority affirms the trial court's denial of Hutchins' motion to suppress based *solely* on the trial court's finding that the police officer's testimony that Hutchins gave him verbal consent to conduct the search was "credible." It does not consider the totality of the circumstances. I believe that affirming the trial court's ruling presents an irresistible incentive for the police to conduct a full warrantless search of any vehicle they choose to pull over for a minor traffic infraction—here, going forty miles per hour in a thirty-five-mile-per-hour zone—upon the mere testimony of an officer that the defendant gave verbal consent to the search. I therefore respectfully dissent.

## Background

At the suppression hearing, Houston Police Department Officer L. Smith testified that he pulled Hutchins over for driving forty miles per hour in a thirty-five-mile-per-hour zone. As he approached the car, he saw two pill bottles in plain view. Hutchins confirmed the pills were his. Officer Smith testified that he asked Hutchins for consent to search his vehicle and Hutchins gave him verbal consent. He did not give Hutchins verbal warnings that he had the right to decline the search and did not ask him to sign a written consent form, even though he had the forms

2

with him in his patrol car. He did not give Hutchins a ticket for speeding. Officer Smith testified that Hutchins was detained but not under arrest at the time he allegedly consented to the search and that he asked Hutchins to get out of the car, which Hutchins did. Officer Smith then placed him in the back seat of his patrol car and searched the vehicle.

Hutchins testified that he was not going over thirty-five miles per hour because he had just pulled away from a traffic light. He testified that Officer Smith stopped him, asked for his driver's license, and took it back to his patrol car. Officer Smith then returned, asked Hutchins to step out of the vehicle, asked him what he was doing, told him he need to search Hutchins' vehicle, handcuffed him, and placed him in the back seat of his patrol car. When asked whether Officer Smith requested verbal consent to search, whether Smith showed him anything in writing, and whether he in fact gave consent to search, Hutchins responded, "No, sir." He also testified that he did not feel free to leave.

Hutchins testified that Officer Smith then searched the front of his car and found two pill bottles, "my two bottles in my name in the armrest." Officer Smith brought them back to the patrol car and asked Hutchins about them, saying they were expired. Hutchins told him that he was looking at the wrong date and that they were not expired. Officer Smith then returned to the car, again without asking for consent to search, opened the trunk and appeared to go into the wheel well of

3

the trunk, but Hutchins could not be certain because he could not see all the way into the trunk from where he was sitting in the back seat of the patrol car.

After denying Hutchins' motion to suppress, the trial court entered findings with respect to certain historical facts. The pertinent historical findings were that:

- "Officer Smith observed two pill bottles in the front seat of Defendant's vehicle in plain view";

- "Defendant advised that the pill bottles were prescribed to him";

- "Officer Smith asked Defendant if he could search his vehicle";

- "Defendant freely and voluntarily gave verbal consent to search his vehicle";

- "Officer Smith began searching the Defendant's vehicle and confirmed that the two pill bottles found in the front seat belonged to Defendant";

- "Officer Smith continued to search the Defendant's vehicle and discovered in the trunk in plain view a tan fiesta bag";

- "Officer Smith could see in plain view two additional white bags in the tan fiesta bag that are normally used to hold prescription bottles";

- "Officer Smith observed 3 additional pill bottles inside of the white bags";

- "1 pill bottle was prescribed to Veronica Jacobs";

- "[T]he 2 other pill bottles had no prescription label"; and

- "Officer Smith continued to search the trunk area and found another pill bottle with no prescription label under a board that covers the spare tire area."

4

The trial court then found "based upon Officer [Smith's] testimony and demeanor during his testimony . . . that Officer [Smith] conducted the search of the vehicle driven by Defendant in good faith" and that "Officer [Smith] did not exceed the scope of a permissible search under the circumstances presented."

**Discussion**

The test for voluntary consent to search is not merely based on the trial court's estimation of the credibility of the officer who conducted the search, but on the totality of the circumstances of the search; and the officer's testimony does not outweigh all other evidence and make a full search of a person's vehicle legal all by itself. Most importantly, the State must prove by "clear and convincing evidence" that the consent was "freely and voluntarily" given. I do not think the facts of this case support such a conclusion.

For search and seizure issues, the appellate courts "engage in a mixed review," giving "almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor while we review *de novo* application-of-law-to-fact questions that do not turn upon credibility and demeanor." *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). When the trial court makes explicit findings of fact, the appellate court must give deference to those findings. *State v. Sheppard*, 271 S.W.3d 281, 286 (Tex. Crim. App. 2008). Likewise, when the trial

5

court makes an explicit credibility finding, the appellate court must give deference to that credibility determination. *Id.* However, "[a]ppellate courts review the legal determination of detention, reasonable suspicion, and probable cause under the Fourth Amendment *de novo . . . .*" *Id.* at 286–87. Because consent issues are necessarily fact intensive, a trial court's finding of voluntariness must be accepted on appeal unless it is clearly erroneous. *Meekins v. State*, 340 S.W.3d 454, 460 (Tex. Crim. App. 2011).

### 1. Voluntary Consent to Search

As the majority states, a warrantless search, even if based on probable cause, is *per se* unreasonable, subject to a few specifically established and well-delineated exceptions. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043 (1973); *Meekins*, 340 S.W.3d at 458. One exception is a search conducted with a person's free and voluntary consent. *Meekins*, 340 S.W.3d at 458 (citing *Schneckloth*, 412 U.S. at 219, 93 S. Ct. at 2043–44).

Consent to search may be communicated to law enforcement in a variety of ways, "[b]ut the Fourth and Fourteenth Amendments require that a consent not be coerced, by explicit or implicit means, by implied threat or covert force." *Id.* at 458–59 (quoting *Schneckloth*, 412 U.S. at 228, 93 S. Ct. at 2048). "The validity of a consent to search is a question of fact to be determined from all the circumstances." *Id.* at 458 (citing *Schneckloth*, 412 U.S. at 226, 93 S. Ct. at 2047).

Resolving a question about the voluntariness of a consent requires the trial court to "conduct a careful sifting and balancing of the unique facts and circumstances of each case." *Id.* at 459. The ultimate question is whether the suspect's "will ha[s] been overborne and his capacity for self-determination critically impaired," so that his consent to the search "must have been involuntary." *Id.* (quoting *United States v. Watson*, 423 U.S. 411, 424, 96 S. Ct. 820, 828 (1976)). "[K]nowledge of a right to refuse is not a prerequisite of a voluntary consent." *Schneckloth*, 412 U.S. at 234, 93 S. Ct. at 2051. However, "the showing of a warning is of evidentiary value in determining whether a valid consent was given." *Meeks v. State*, 692 S.W.2d 504, 510 (Tex. Crim. App. 1985). If, under all the circumstances, it appears that the consent was involuntary, "that it was coerced by threats or force, or granted only in submission to a claim of lawful authority," then the consent is invalid and the search is unreasonable. *Schneckloth*, 412 U.S. at 233, 93 S. Ct. at 2051.

"[T]he prosecution must prove by clear and convincing evidence that the consent was freely and voluntarily given" before the consent to search is deemed effective. *Meeks*, 692 S.W.2d at 509 (citing *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S. Ct. 1788, 1792 (1968)). "The [clear and convincing evidence] burden requires the prosecution to show the consent given was *positive and unequivocal* and there *must not be duress or coercion, actual or implied*." *Id.* (emphasis added); *see Brown v. State*, 212 S.W.3d 851, 869 (Tex. App.—Houston

[1st Dist.] 2006, pet. ref'd). "[T]he standard for measuring the scope of consent under the Fourth Amendment is that of *'objective' reasonableness*—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Meekins*, 340 S.W.3d at 459 (emphasis added) (quoting *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S. Ct. 1801, 1803–04 (1991)). This inquiry is made "from the point of view of the objectively reasonable person, without regard for the subjective thoughts or intents of either the officer or the citizen." *Id.*

### 2. Totality of the Circumstances

Here, the circumstances under which Hutchins' consent to search his automobile was obtained were as follows. Officer Smith's search of Hutchins' automobile initially took place within the context of a *Terry* stop based on Smith's observation of two prescription pill bottles in plain view in the armrest of Hutchins' car when he stopped Hutchins for driving forty miles per hour in a thirty-five-mile-per-hour zone. Hutchins confirmed the pills were his. Officer Smith testified that he obtained verbal consent from Hutchins to search his car. He did not advise Hutchins that he had the right not to consent to the search, and he did not give Hutchins a consent form to sign although he had the forms in his patrol car. After Officer Smith obtained consent to the search, he handcuffed Hutchins and placed him in the backseat of his patrol car before beginning the search, admitting that at that point Hutchins was detained and thus not free to

8

leave.  Officer Smith then searched the armrest, obtained the pill bottles, and verified they were unexpired prescriptions in Hutchins' name.  He then continued to search Hutchins' vehicle while Hutchins remained under detention in the back seat of the patrol car and discovered contraband prescription pills in the trunk and wheel well.

"An officer may conduct a brief investigative detention, or '*Terry* stop,' when he has a reasonable suspicion to believe that an individual is involved in criminal activity."  *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002) (citing *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968)); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. 2000).  The reasonableness of the temporary detention "must be examined in terms of the totality of the circumstances and will be justified when the detaining officer has specific articulable facts, which, taken together with rational inferences from those facts, lead him to conclude that the person detained actually is, has been, or soon will be engaged in criminal activity." *Balentine*, 71 S.W.3d at 768; *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997).  "The reasonableness of the detention . . . depends on whether the police diligently pursued a means of investigation that was likely to dispel or confirm their suspicions quickly."  *Balentine*, 71 S.W.3d at 770.  "An investigative detention must be temporary and the questioning must last no longer than is necessary to effectuate the purpose of the stop."  *Id.* at 770.

The "plain view" doctrine may confer on an officer the authority to conduct an investigative detention. *See Baldwin v. State*, 278 S.W.3d 367, 372 (Tex. Crim. App. 2009). The "plain-view" doctrine permits an officer with prior justification for an intrusion of privacy to seize evidence incriminating the accused that the officer observes in plain view without having to obtain a warrant for that evidence. *Horton v. California*, 496 U.S. 128, 135–36, 110 S. Ct. 2301, 2307 (1990); *Walter v. State*, 28 S.W.3d 538, 541 (Tex. Crim. App. 2000) ("While searches conducted without a warrant are *per se* unreasonable, seizing contraband in plain view does not run afoul of the Fourth Amendment.").

The "plain view" doctrine requires only that the officer "did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed" and that it be "immediately apparent that the item seized constitutes evidence, that is, there is probable cause to associate the item with criminal activity." *Walter*, 28 S.W.3d at 541. "What the 'plain view' cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused." *Horton*, 496 U.S. at 135, 110 S. Ct. at 2307. But "the extension of the original justification is legitimate only where it is immediately apparent to the police that they have evidence before them; the 'plain view' doctrine may not be used to extend a general exploratory search from one object to

another until something incriminating at last emerges." *Id.* at 136, 110 S. Ct. at 2307.

### 3. *Analysis*

To prove by clear and convincing evidence that Hutchins' consent to search his entire car, including the trunk, was valid, the State was required to prove that an objectively reasonable person would have understood from the totality of the circumstances that Hutchins' consent was freely and voluntarily given and was not the result of duress or coercion, actual or implied, or granted only in response to an assertion of lawful authority. *See Schneckloth*, 412 U.S. at 233, 93 S. Ct. at 2051; *Meekins*, 340 S.W.3d at 458–59; *Meeks*, 692 S.W.2d at 509.

In my view, the claim that an *objectively* reasonable person could have believed that Hutchins freely and voluntarily gave Officer Smith valid verbal consent to make this search of the entire automobile is impossible to sustain under the totality of the circumstances of this case. *See Meekins*, 340 S.W.3d at 459 ("[T]he standard for measuring the scope of consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?").

The *only* justification for Officer Smith's illegal search of Hutchins' vehicle was his stated subjective belief that Hutchins had freely and voluntarily consented to the full search of his car, including the car's trunk and wheel well. Officer

Smith testified that when he pulled Hutchins over for driving forty miles per hour in a thirty-five-mile-per-hour zone he observed two prescription bottles in Hutchins' armrest. Although Hutchins told him the prescription drugs were his, Officer Smith could reasonably have believed that the pills were contraband and thus would have been justified in initiating a *Terry* stop to determine whether the pills were, in fact, evidence of illegal activity. *See Balentine*, 71 S.W.3d at 768 (stating that officer may conduct *Terry* stop when he has reasonable suspicion that individual is involved in criminal activity). Indeed, it is hard to conceive of any reason for Officer Smith to have asked Hutchins for consent to search his car other than the officer's having seen the prescription pills in plain view in the armrest, and the evidence supports no other reasonable inference.

The record shows that Officer Smith did initiate a *Terry* stop, told Hutchins to step out of the vehicle, handcuffed him, placed him in the back of his patrol car, and went back to search Hutchins' car and retrieve the pills. Officer Smith testified that at that time Hutchins was "detained" but not under arrest. This evidence undermines Officer Smith's testimony and the trial court's finding that Hutchins' consent was freely and voluntarily given as opposed to being obtained pursuant to Smith's assertion of lawful authority to search the vehicle. Thus, these facts weigh against a finding that Hutchins freely and voluntarily consented to the search of his vehicle. *See Schneckloth*, 412 U.S. at 233, 93 S. Ct. at 2051 (holding

12

that if, under all circumstances, it appears that consent was "granted only in submission to a claim of lawful authority," consent is invalid).

Officer Smith also testified that he had in his patrol car—but did not give to Hutchins—consent-to-search forms. And he testified that he did not inform Hutchins of his right to refuse to consent to a search of his vehicle. This is evidence that Officer Smith had the ability to verify the verbal consent to search he testified Hutchins gave him and thus also argues against an objectively reasonable belief that Hutchins freely and voluntarily gave consent to search the vehicle. Likewise, Hutchins' unrebutted testimony that Officer Smith handcuffed him prior to the search is evidence that any consent given was coerced and given only in submission to the lawful authority to search the car that Officer Smith projected. *See id.*

Officer Smith then searched the front of the car, retrieved the two pill bottles, and immediately took them to Hutchins, who verified that they were unexpired prescriptions in his name. At that point, any further search became objectively unreasonable in the absence of clear and convincing evidence that Hutchins had consented to a full search of his car. *See Balentine*, 71 S.W.3d at 768–70 (stating that "[a]n investigative detention must be temporary and the questioning must last no longer than is necessary to effectuate the purpose of the stop"). There was no evidence that Hutchins had been or was engaged in any

13

illegal activity. Thus, Officer Smith "lacked probable cause to search for non-weapon contraband or other evidence." *See Baldwin*, 278 S.W.3d at 371–72 (stating that when conditions justifying "plain view" search "are not present, an officer conducting a valid investigative detention must have probable cause in order to conduct a search for non-weapon contraband or other evidence").

At the point at which Officer Smith conducted the full search of Hutchins' car that turned up the evidence of contraband, the *only* justification for the further detention of Hutchins and the full search of his vehicle was an objectively reasonable belief that Hutchins had freely and voluntarily given him consent to conduct a full search of his vehicle without doing so in submission to lawful authority or by coercion, actual or implied, even though Officer Smith testified that Hutchins was detained when handcuffed and placed in the back of the patrol car prior to any search. *See Meekins*, 340 S.W.3d at 459 (scope of consent is objectively unreasonable when typical reasonable person would not have understood defendant to have consented to full search).

Given the totality of the circumstances, I can only conclude that the State fell short of carrying its burden of showing by clear and convincing evidence that Hutchins gave "positive and unequivocal" consent to a full search of his automobile without "duress or coercion, actual or implied"—consent that an objectively reasonable person observing the exchange would believe to have been

freely and voluntarily given. *See Meeks*, 692 S.W.2d at 509; *see also Schneckloth*, 412 U.S. at 233, 93 S. Ct. at 2051 (consent that was "coerced by threats or force, or granted only in submission to a claim of lawful authority" is invalid and search is unreasonable); *Meekins*, 340 S.W.3d at 459 (scope of consent is objectively unreasonable when typical reasonable person would not have understood defendant to have consented to full search).

As evidence of consent, the State presented only Officer Smith's testimony that Hutchins consented to the search. Hutchins, on the other hand, in addition to denying that he consented to the search, presented evidence that while conducting the search, Officer Smith kept him handcuffed in the back of his patrol car, not having advised him of his right not to consent to the search and not having confirmed Hutchins' free and voluntary consent to the search by asking him to sign the consent form Officer Smith had with him. And the search itself was unconstitutional unless conducted with the free and voluntary consent Officer Smith testified that Hutchins gave him.

**Conclusion**

I find this case very troubling. It signals that a police officer's credible testimony that a defendant's free and voluntary consent to a warrantless and otherwise illegal search is sufficient by itself to establish by clear and convincing evidence the legality of the search and to justify seizure of contraband as

constitutionally permissible when all other evidence necessary to establish that the consent was voluntary from the totality of the circumstances undermines that conclusion. I would hold that the evidence in this case is insufficient to show clearly and convincingly that Hutchins freely and voluntarily consented to the search that turned up the evidence of the contraband upon which he was convicted. Therefore, I would hold that Officer Smith's full search of Hutchins' vehicle was an illegal search in violation of the Fourth Amendment and that the evidence of contraband seized was inadmissible as the fruit of an illegal search in contravention of the Fourth Amendment.

I would reverse the trial court's denial of Hutchins' motion to suppress, and I would remand the case to the trial court for proceedings consistent with this opinion.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Bland, and Massengale.

Justice Keyes, dissenting.

Publish. TEX. R. APP. P. 47.2(b).