**Affirmed and Memorandum Opinion filed April 9, 2019.**



In The

# 𝔉𝔬𝔲𝔯𝔱𝔢𝔢𝔫𝔱𝔥 𝔔𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

## NO. 14-18-00067-CR

**COREY CARDREY THOMAS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 264th District Court
Bell County, Texas
Trial Court Cause No. 76497**

## M E M O R A N D U M   O P I N I O N

A jury found Appellant Corey Cardrey Thomas guilty of assault on a public servant and assessed punishment at 53 years' imprisonment. *See* Tex. Penal Code Ann. § 22.01(b)(1) (Vernon Supp. 2018). Appellant appeals his conviction and asserts the trial court erred by denying his pre-trial motion to suppress everything searched and seized as a result of the warrantless arrest. For the reasons below, we

affirm.[1]

## BACKGROUND

Appellant was arrested for assaulting Killeen Police Department Officer Christopher Stickles. Appellant filed a pre-trial motion to suppress evidence allegedly obtained in violation of his constitutional and statutory rights. *See* Tex. Code Crim. Proc. Ann. art. 38.23 (Vernon 2005). The trial court held a hearing on Appellant's motion to suppress. Relevant witness testimony is summarized below.[2]

The Bell County 911 Center records custodian testified with respect to a 911 call received from Complainant on September 18, 2016. In the 911 call, Complainant states that Appellant was threatening her and told her he would have her killed. Complainant told the 911 operator that Appellant was looking for her at her mother's house and had threatened to shoot her.[3] Complainant gave her address to the 911 operator.

Officer Stickles was driving his patrol vehicle accompanied by Officer Ramon. Officer Stickles received the 911 dispatch and responded to the address

---

[1] This case was transferred to this court from the Third Court of Appeals by Texas Supreme Court Transfer Order Misc. Docket No. 18-9006, issued January 9, 2018. Because of the transfer, we must decide the case in accordance with the precedent of the Third Court of Appeals if our decisions otherwise would have been inconsistent with that court's precedent. *See* Tex. R. App. P. 41.3.

[2] Because the trial court ruled on Appellant's motion after the conclusion of the suppression hearing but before trial, we consider only evidence and testimony from the suppression hearing. *See Rachal v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996) (en banc) (when reviewing a trial court's ruling on a motion to suppress, "we generally consider only evidence adduced at the suppression hearing because the ruling was based on it rather than evidence introduced later"); *see also Turner v. State*, 252 S.W.3d 571, 577 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd).

[3] In her 911 call, Complainant stated that Appellant was named "Corey Taylor." At trial, Complainant testified that "Corey Taylor" was the name by which she knew Appellant.

provided by Complainant. Describing his meeting with Complainant, Officer Stickles testified that Complainant "was scared, that [Appellant] was texting her and looking for her, coming by the residence looking for her, and she was scared for her life." Officer Stickles stated that Complainant told him "[Appellant] was going to kill [Complainant] and [Complainant's] family."

Officer Stickles testified that Complainant showed him text messages she received from Appellant in which Complainant and Appellant "were arguing back and forth." Officer Stickles recalled that one of the messages told Complainant that "the kids would be better off without her." Complainant also told Officer Stickles that Appellant carries a gun and drives a white Suburban with white windshield wiper blades. Complainant told Officer Stickles where to find Appellant.

Responding to Appellant's location as provided by Complainant, Officer Stickles "located a white [S]uburban with white windshield wiper blades just as [Complainant] explained." Officer Stickles saw Appellant standing next to the Suburban's driver's side door. Officer Stickles parked his patrol vehicle in front of the white Suburban and asked Appellant for his name. Officer Stickles testified that Appellant "continued to get upset and wouldn't answer the question." Officer Stickles stated that Appellant "continued to refuse" to answer questions; "back[ed] away" from Officer Stickles; and "attempted to flee on foot."

According to Officer Stickles, he "grab[bed] the back of [Appellant's] shirt" to "keep him from fleeing." Officer Stickles stated that he fell to his knees and Appellant put him in a headlock. Officer Stickles testified that Appellant "forced his weight on top of me and had me on the ground where I was on my back where he began striking me." Officer Stickles recalled that Appellant was tugging at his belt near his service weapon. Officer Ramon pulled Appellant off Officer Stickles

3

and Appellant was arrested for assaulting a police officer.

Officer Stickles's patrol car dash camera recorded his interactions with Appellant. The dash camera video shows Officer Stickles and Officer Ramon approaching Appellant in front of a white Suburban; Officer Stickles asks Appellant for his name and tells Appellant they are investigating a harassment call. Appellant asks Officer Stickles if he is detained; Officer Stickles replies "you're about to be, yes."

Appellant and Officer Stickles begin to argue, with Appellant telling Officer Stickles "wherever you got the call from is where you're supposed to be." Appellant does not provide his name to Officer Stickles. Appellant walks out of the camera's frame and is followed by Officer Stickles and Officer Ramon. The dash camera video records sounds of the ensuing scuffle; none of the individuals again appear in the camera's frame before the video ends.

After the hearing, the trial court denied Appellant's motion to suppress. Appellant proceeded to trial and the jury found him guilty of assault on a public servant. *See* Tex. Penal Code Ann. § 22.01(b)(1). The trial court signed a judgment of conviction on December 1, 2017. Appellant timely appealed.

## STANDARD OF REVIEW

The trial court's denial of a motion to suppress is reviewed under a bifurcated standard. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013); *Tyler v. State*, 491 S.W.3d 1, 2-3 (Tex. App.—Houston [14th Dist.] 2016, no pet.). The trial court's determinations of historical fact and mixed questions of law and fact that rely on credibility are granted almost total deference when supported by the record. *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013). When reviewing findings that depend on an evaluation of witnesses'

4

credibility and demeanor, we view the evidence in the light most favorable to the trial court's ruling. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997) (en banc).

"But when mixed questions of law and fact do not depend on the evaluation of credibility and demeanor, we review the trial judge's ruling de novo." *Kerwick*, 393 S.W.3d at 273.

When, as here, the trial court does not make explicit findings of fact, we uphold the trial court's ruling on any theory applicable to the case and we presume the trial court made implicit findings in support of its ruling if those findings are supported by the record. *Tyler*, 491 S.W.3d at 3.

## ANALYSIS

In his sole issue, Appellant argues that, because Officer Stickles "lacked probable cause to detain or arrest Appellant without a warrant, everything searched and seized as a result of that arrest should have been suppressed." The State asserts that Officer Stickles (1) had reasonable suspicion of criminal activity to justify Appellant's investigatory detention; and (2) had probable cause to arrest Appellant without a warrant. We examine these arguments below.

## I. Legal Standards

Interactions between police officers and civilians generally can be divided into three categories: (1) consensual encounters; (2) investigative detentions; and (3) arrests. *Wade v. State*, 422 S.W.3d 661, 667 (Tex. Crim. App. 2013); *Neale v. State*, 525 S.W.3d 800, 806 (Tex. App.—Houston [14th Dist.] 2017, no pet.). An investigative detention triggers the Fourth Amendment's protections against unreasonable searches and seizures and therefore must be of limited scope and duration and be supported by a reasonable suspicion of criminal activity. *See*

*Johnson v. State*, 414 S.W.3d 184, 191-92 (Tex. Crim. App. 2013). "An investigative detention occurs when a person surrenders to a police officer's show of authority, coupled with the person's reasonable belief that he is not free to leave." *Neale*, 525 S.W.3d at 806 (citing *Crain v. State*, 315 S.W.3d 43, 49 (Tex. Crim. App. 2010)).

An investigative detention must last no longer than necessary to effectuate the purpose of the stop and must involve actual investigation. *Davis v. State*, 947 S.W.2d 240, 244-45 (Tex. Crim. App. 1997) (en banc). In an investigative detention, an officer may use such force as is reasonably necessary to effect the goal of the stop. *See Rhodes v. State*, 945 S.W.2d 115, 117 (Tex. Crim. App. 1997).

An officer's reasonable suspicion warrants an investigative detention if the officer "has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity." *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011). This standard is objective and considers the totality of the circumstances surrounding the investigatory detention. *Arguellez v. State*, 409 S.W.3d 657, 663 (Tex. Crim. App. 2013). The detaining officer need not personally be aware of every fact that objectively supports a reasonable decision to detain; the cumulative information known to the cooperating officers at the time of the stop is considered for the reasonable-suspicion determination. *Furr v. State*, 499 S.W.3d 872, 878 (Tex. Crim. App. 2016); *Derichsweiler*, 348 S.W.3d at 914. We review *de novo* whether the totality of the circumstances is sufficient to support an officer's reasonable suspicion of criminal activity. *Arguellez*, 409 S.W.3d at 663.

Reasonable suspicion may be based on a tip from a citizen-informant. *See,*

6

*e.g., Garcia v. State*, 296 S.W.3d 180, 185-86 (Tex. App.—Houston [14th Dist.] 2009, no pet.). If a citizen-informant identifies herself and may be held accountable for the accuracy and veracity of the offense she reports, then the information she provides also may be regarded as reliable. *Derichsweiler*, 348 S.W.3d at 914-15; *see also Johnson v. State*, 444 S.W.3d 209, 214 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). This rule also applies if the citizen-informant is the alleged victim of the reported crime. *Smith v. State*, 491 S.W.3d 864, 870 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). In these circumstances, the only question is "whether the information that the citizen-informant provides, viewed through the prism of the detaining officer's particular level of knowledge and experience, objectively supports a reasonable suspicion to believe that criminal activity is afoot." *Derichsweiler*, 348 S.W.3d at 915.

In contrast to the reasonable-suspicion standard, a warrantless arrest must be supported by probable cause. *See Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009); *Banda v. State*, 317 S.W.3d 903, 911 (Tex. App.—Houston [14th Dist.] 2010, no pet.). "Probable cause for a warrantless arrest exists when the arresting officer possesses reasonably trustworthy information sufficient to warrant a reasonable belief that an offense has been or is being committed." *Banda*, 317 S.W.3d at 911. Determinations of probable cause also are reviewed *de novo*. *Chilman v. State*, 22 S.W.3d 50, 54 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd).

## II.     Application of Legal Standards

Appellant argues that Officer Stickles "lacked probable cause to detain . . . Appellant without a warrant." This argument conflates the Fourth Amendment's requirements with respect to investigatory detentions and arrests. *See Wade*, 422 S.W.3d at 667. Whereas an arrest must be supported by probable cause, an

investigatory detention "must be supported by a reasonable suspicion of criminal activity." *Id.*

Here, considering the totality of the circumstances surrounding Officer Stickles's interactions with Appellant, Officer Stickles had a reasonable suspicion of criminal activity to justify his initial investigatory detention of Appellant. *See Arguellez*, 409 S.W.3d at 663; *Derichsweiler*, 348 S.W.3d at 914. Officer Stickles testified with respect to specific, articulable facts that reasonably would have led him to conclude that Appellant had engaged or soon would be engaged in criminal activity. *See Derichsweiler*, 348 S.W.3d at 941.

Officer Stickles testified that the investigatory detention was based on the information he received from Complainant, *i.e.*, that Appellant "had a gun" and "was threatening to kill her." Officer Stickles stated that Complainant showed him text messages she had received from Appellant; Officer Stickles recalled that one of the messages told Complainant that "the kids would be better off without her." Officer Stickles stated that Complainant was "scared," and Complainant provided Officer Stickles with information regarding Appellant's vehicle and location. These facts, combined with rational inferences from these facts, support Officer Stickles's determination that Appellant was or soon would be engaged in criminal activity, namely, threatening Complainant with bodily injury. *See* Tex. Penal Code Ann. § 22.07(a)(2) (Vernon Supp. 2018) ("[a] person commits an offense if he threatens to commit any offense involving violence to any person or property with intent to: . . . (2) place any person in fear of imminent serious bodily injury"); *see also Barrios v. State*, 452 S.W.3d 835, 841-42 (Tex. App.—Amarillo 2014, pet. ref'd) (the appellant's "threats to kill" complainant and his family warranted officer's reasonable suspicion that the appellant "was committing the offenses of disorderly conduct and terroristic threat").

Appellant asserts that the text messages between Appellant and Complainant "were not threatening and did not mention harming or killing anyone." However, Officer Stickles testified that, in one of the text messages, Appellant told Complainant that "the kids would be better off without her." Although this message does not overtly threaten bodily injury, it supports a reasonable suspicion of criminal activity when considered in the context of other facts known by and relayed to Officer Stickles by Complainant. In addition to providing the text message, Complainant told Officer Stickles that Appellant was "looking for her, coming by the residence looking for her, and [that] she was scared for her life." Officer Stickles stated that Complainant told him "[Appellant] was going to kill [Complainant] and [Complainant's] family." The facts support a reasonable suspicion of criminal activity. *See Arguellez*, 409 S.W.3d at 663; *Derichsweiler*, 348 S.W.3d at 914.

Appellant also argues that Officer Stickles "lacked probable cause to . . . arrest Appellant without a warrant." The evidence does not support Appellant's contention.

Officer Stickles testified that he "grab[bed] the back of [Appellant's] shirt" when Appellant "attempted to flee on foot." Officer Stickles said that he fell to his knees and that Appellant began striking him. Officer Stickles stated that Appellant "was tugging at [his] duty belt near [his] duty weapon." Officer Stickles said Appellant was arrested for "[a]ssault on a peace officer." *See* Tex. Penal Code Ann. § 22.01(b)(1).

Probable cause for a warrantless arrest may be based on a crime committed in the officer's presence. *See, e.g., Garcia v. State*, 218 S.W.3d 756, 760 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (officer had probable cause to arrest Appellant where he witnessed Appellant commit two traffic violations); *De Jesus*

9

*v. State*, 917 S.W.2d 458, 461 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd) (officer had probable cause to arrest Appellant where he saw Appellant in possession of luggage that contained narcotics). Here, Officer Stickles not only witnessed Appellant commit an offense but also was the victim of that offense. *See* Tex. Penal Code Ann. § 22.01(b)(1) ("intentionally, knowingly, or recklessly caus[ing] bodily injury" to a public servant constitutes a third degree felony). Considering the totality of the circumstances, Officer Stickles possessed trustworthy information that warranted a reasonable belief that Appellant had committed an offense. *See Banda*, 317 S.W.3d at 911.

Appellant cites *Baldwin v. State*, 278 S.W.3d 367 (Tex. Crim. App. 2009), but this case is distinguishable. The officer in *Baldwin* was told by a citizen-informant that a person in dark clothes was seen walking around the neighborhood looking in houses' windows; there previously had been several burglaries in the neighborhood. *Id*. at 369-70. The officer apprehended the appellant and, based on their interactions, concluded that the appellant was "going to fight or . . . going to run." *Id*. at 370. The officer handcuffed the appellant and reached in the appellant's pocket for his identification, which was in the appellant's wallet. *Id*. When he opened the appellant's wallet, the officer found a small baggie with cocaine. *Id*.

The *Baldwin* court concluded that the officer lacked probable cause to arrest the appellant or search the appellant for non-weapon contraband or other evidence. *Id*. at 372. Reversing the trial court's denial of the appellant's motion to suppress, the court stated, "these circumstances did not give rise to the relatively high level of suspicion that would constitute probable cause to arrest." *Id*. at 371.

In contrast to the circumstances in *Baldwin*, the assault happened after the investigatory detention was initiated and Officer Stickles had actual knowledge of

the events.  *See* Tex. Penal Code Ann. § 22.01(b)(1); *Banda*, 317 S.W.3d at 911. Appellant's reliance on *Baldwin* is misplaced.

We overrule Appellant's sole issue on appeal.

## CONCLUSION

We affirm the trial court's December 1, 2017 judgment.

/s/      Meagan Hassan
         Justice

Panel consists of Chief Justice Frost and Justices Zimmerer and Hassan. Do Not Publish — Tex. R. App. P. 47.2(b).