**AFFIRMED and Opinion Filed March 27, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-00839-CR**

**MARCUS KEITH SCOTT, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 6**
**Dallas County, Texas**
**Trial Court Cause No. F22-00187-X**

# MEMORANDUM OPINION

Before Justices Garcia, Breedlove, and Kennedy
Opinion by Justice Garcia

A jury convicted appellant of unlawful possession of a firearm by a felon and assessed punishment at four years in prison. In a single issue on appeal, appellant argues the trial court erred in denying his motion to suppress because the police did not have reasonable suspicion to detain him. We conclude the officers had reasonable suspicion that appellant might be armed and were concerned for officer safety. Because the temporary detention was constitutionally permissible we affirm the trial court's judgment.

# I. BACKGROUND

Appellant was seated on the passenger side of a parked vehicle one house down from a "trap house" where police were executing a narcotics search warrant.[1] Appellant was alone, and his eyes were on the trap house.

Police walked by appellant's vehicle and asked him to show his hands. Appellant lifted one hand but kept his right hand at his side. Appellant was asked to show his hands approximately eight times, but he did not comply.

When an officer opened the back passenger door of the vehicle, appellant reached for his waistband with his left hand. Appellant put his right arm up and an officer grabbed it while appellant reached for his pants pocket with his left hand. Officers removed appellant from the vehicle.

A handgun was found several feet away from where appellant landed. Appellant initially denied that it was his, but subsequently admitted that it was his gun.

Appellant filed a motion to suppress, and the court conducted a pretrial hearing on the motion. Appellant argued that the officers lacked reasonable suspicion to detain him because he was legally parked, it was only 6:40 p.m., and

---

[1] A "trap house" is defined as "a crack house, or the surroundings in which a drug dealer . . . would use to make their profit." *Dotson v. State*, No. 12-13-00387-CR, 2015 WL 3522993, at *1 n.2 (Tex. App.—Corpus Christi-Edinburg June 4, 2015, pet. ref'd) (mem. op., not designated for publication); *see also Dallas v. State*, No. 05-17-00422-CR, 2018 WL 6566638, at *1 n.1, (Tex. App.—Dallas 2018, no pet.) (mem. op., not designated for publication) (Trap house is a drug house).

there was no reasonable basis for officers to believe he was engaged in criminal activity. The trial court denied the motion and the case was tried to a jury.

The jury convicted appellant of unlawful possession of a firearm by a felon and assessed punishment at four years in prison. This timely appeal followed.

## II. ANALYSIS

### A. Standard of Review and Applicable Law

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). In reviewing a ruling on a motion to suppress, we apply a bifurcated standard of review. *Brodnex v. State*, 485 S.W.3d 432, 436 (Tex. Crim. App. 2016); *Martinez*, 348 S.W.3d at 922–23. We give almost total deference to the trial court's determination of the historical facts that the record supports, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Derichsweiler v. State*, 348 S.W.3d 906, 913 (Tex. Crim. App. 2011); *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). We also defer to the trial court's findings on questions of fact and mixed questions of law and fact that turn on the weight or credibility of the evidence. *Brodnex*, 485 S.W.3d at 436; *Wade v. State*, 422 S.W.3d 661, 666–67 (Tex. Crim. App. 2013); *Derichsweiler*, 348 S.W.3d at 913.

We review de novo the trial court's determination of pure questions of law, the application of the law to established facts, and the legal significance of those

–3–

facts. *Lerma v. State*, 543 S.W.3d 184, 190 (Tex. Crim. App. 2018); *Wade*, 422 S.W.3d at 667; *Kothe v. State*, 152 S.W.3d 54, 62 (Tex. Crim. App. 2004) (citing *United States v. Sharpe*, 470 U.S. 675, 682 (1985)). We also review de novo mixed questions of law and fact that are not dependent upon credibility determinations. *Brodnex*, 485 S.W.3d at 436.

If the record is silent regarding the reasons for the trial court's ruling, as in the case before us, we review the evidence in the light most favorable to the trial court's ruling, infer the necessary fact findings that support the trial court's ruling if the evidence supports those findings, and assume that the trial court made implicit findings to support its ruling. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). When considering a motion to suppress, the trial court is the exclusive trier of fact and judge of the credibility of the witnesses. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). As such, the trial court may choose to believe or to disbelieve all or any part of a witness's testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). Therefore, we will sustain the trial court's ruling on a motion to suppress, regardless of whether the trial court granted or denied the motion, if it is supported by the record and if it is correct under any applicable theory of law. *Lerma*, 543 S.W.3d at 190; *Ross*, 32 S.W.3d at 855–56.

The Fourth Amendment of the United States Constitution protects against unreasonable searches and seizures. *Atkins v. State*, 882 S.W.2d 910, 912 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd); *see* U.S. CONST. amend. IV. But not

every encounter between law enforcement officers and citizens implicates constitutional protections. *Hunter v. State*, 955 S.W.2d 102, 104 (Tex. Crim. App. 1997). Interactions between law enforcement officers and citizens are often characterized as consensual encounters, investigative detentions, or arrests. *State v. Woodard*, 341 S.W.3d 404, 410–11 (Tex. Crim. App. 2011); *Crain v. State*, 315 S.W.3d 43, 49 (Tex. Crim. App. 2010). Arrests require either a warrant or probable cause, while investigative detentions constitute brief seizures that are less intrusive than arrests and require only reasonable suspicion. *Derichsweiler,* 348 S.W.3d at 914–17; *Amador*, 275 S.W.3d at 878.

When evaluating the reasonableness of an investigative detention, we conduct the inquiry set forth by the United States Supreme Court in *Terry* to determine whether (1) the officer's action was justified at its inception; and (2) it was reasonably related in scope to the circumstances that initially justified the interference. *See Terry v. Ohio*, 392 U.S. 1, 19–20 (1968); *Davis v. State*, 947 S.W.2d 240, 242 (Tex. Crim. App. 1997).

Under the first part of the inquiry, an officer's reasonable suspicion justifies an investigative detention. *Davis*, 947 S.W.2d at 242–43. Specifically, the officer must have a reasonable suspicion that some activity out of the ordinary is occurring or has occurred. *Id*. at 244. An officer has "reasonable suspicion to detain a person if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been,

or soon will be engaged in criminal activity." *State v. Elias*, 339 S.W.3d 667, 674 (Tex. Crim. App. 2011); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). Reasonable suspicion is a lower measure of suspicion than probable cause, and probable cause "falls far short of a preponderance of the evidence standard." *Baldwin v. State*, 278 S.W.3d 367, 371 (Tex. Crim. App. 2009). Reasonable suspicion is also an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists. *Ford*, 158 S.W.3d at 492.

## B.    Was the Temporary Detention Unreasonable?

Dallas Police Sergeant Kenneth Wolverton, the officer initiating the detention, testified at the suppression hearing. The police were in the process of executing a narcotics search warrant when appellant was approached and detained. Sergeant Wolverton described a narcotics warrant as a dynamic process where police use speed and surprise to get inside a home quickly. If people are located outside the target house, police will move them to a safer location or try to give them a heads up about what is going on. Police do this in case the suspects inside the target home start shooting or fleeing into the street.

Sergeant Wolverton testified that police frequently encounter suspects on the sidewalk and in vehicles outside the house. He explained that trap houses commonly employ a "good eye," an individual who stations himself one or two houses away and acts as a lookout for the people inside. A good eye alerts the occupants of a trap

–6–

house that police are coming so they can evade the police and destroy evidence. Customers also commonly park one house down from a trap house so as to not arouse suspicion or draw attention to the house.

Sergeant Wolverton's body camera recording was admitted into evidence and played for the court. He pointed out appellant's vehicle, parked one house down from the trap house, which was a common area for trap house customers or lookouts to park. Sergeant Wolverton saw appellant sitting in the passenger seat of the vehicle with his eyes on the trap house. The vehicle was not running, and Sergeant Wolverton told the SWAT team to watch the car.

Sergeant Wolverton initially turned his head back towards the house before he returned his attention to appellant's vehicle and commanded appellant to "show his hands." He did so because he did not know if appellant was a potential suspect tied to the trap house. Sergeant Wolverton testified:

> It's a safety thing for me and for them. Once you see their hands, they're usually not that much of a threat anymore if their hands are empty. If they refuse to show their hands, there's usually something they're trying to hide.

Sergeant Wolverton became suspicious when appellant did not show his hands and kept his right hand down by his side. He testified that someone might not raise their hands when directed because they are "defian[t] toward law enforcement in general," or they could have something in their hands that "they're not supposed to have," such as contraband or a weapon.

Sergeant Wolverton and other officers instructed appellant to put his hands up around eight times. Appellant finally acknowledged Sergeant Wolverton with a hand gesture, but he kept his right arm down by his side. When another officer opened the back passenger-side door of the vehicle, appellant reached for his waistband with his left arm. Sergeant Wolverton explained that the waistband is "a common place where people carry their guns." Appellant put his right arm up, and the officer near the back seat door grabbed it while appellant simultaneously reached towards his pants pocket with his left hand. Officers then removed appellant from the vehicle.

Sergeant Wolverton testified that, looking back, appellant did have a gun in his hand, and reviewing the video still makes him uneasy. Considering the totality of the circumstances, he believes his contact with, and detention of appellant was justified.

When considering the reasonableness of a detention, allowances must be made for the fact that officers often make quick decisions under tense, uncertain, and rapidly changing circumstances. *Rhodes v. State*, 945 S.W.2d 115, 118 (Tex. Crim. App. 1997). As Sergeant Wolverton established, such circumstances were present here. As depicted on the video, the scene was loud and chaotic with lights flashing, officers shouting, and loud concussive sounds.[2] A narcotics search warrant was being executed at a trap house and appellant appeared to be acting as a lookout for

---

[2] Sargent Wolverton explained at trial that these sounds were flash-bangs, which are used as diversionary devices.

the target house. *See State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013) (facts must show unusual activity, some evidence that connects the defendant to the unusual activity, and some evidence the unusual activity is related to crime); *see also U.S. v. Arvizu*, 534 U.S. 266, 273 (2002) (nervous behavior coupled with other factors such a presence at a drug house can be considered in determining reasonable suspicion). Appellant's refusal to raise his hands and movement toward his pocket and waistband caused Sergeant Wolverton to be concerned about officer safety. *See Lerma*, 543 S.W.3d at 191 (officer justified in conducting pat-down if reasonably believes suspect is armed and dangerous); *Worthey v. State*, 805 S.W.2d 435, 439 (Tex. Crim. App. 1991) (appellant's sudden movement following instruction not to move hands raised a safety concern).

Appellant argues the gun was not located until eight minutes after he was removed from the vehicle and there was no evidence linking him to the gun before it was found. These facts, however, were not before the court at the suppression hearing. We review the trial court's determination in light of the evidence before it at the time the court's ruling was made. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 1991); *Colter v. State*, Nos. 05-08-0016-CR, 05-08-00017-CR, 2018 WL 6259040, at *2 (Tex. App.—Dallas Nov. 30, 2018, no pet.) (mem. op., not designated for publication).

Further, appellant argues the officers did not have reasonable suspicion to detain him after he was removed from the car. This argument is misplaced. The

length of the detention was not raised at the suppression hearing and is therefore not within the scope of our review. *See* TEX. R. APP. P. 33.1. But even if the argument had been raised, there is nothing in the suppression hearing record that establishes the length of the detention.

On the record before us, considering the totality of the circumstances, a reasonable officer in Sergeant Wolverton's position could have reasonably suspected that appellant might be armed, and officers' safety was in peril. *See Terry*, 392 U.S. at 21–22, 27. Accordingly, the trial court did not err by denying appellant's motion to suppress. Appellant's sole issue is overruled, and the trial court's judgment is affirmed.

/Dennise Garcia/
DENNISE GARCIA
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
220839F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

### JUDGMENT

MARCUS KEITH SCOTT,
Appellant

No. 05-22-00839-CR    V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District
Court No. 6, Dallas County, Texas
Trial Court Cause No. F22-00187-X.
Opinion delivered by Justice Garcia.
Justices Breedlove and Kennedy
participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

Judgment entered March 27, 2024